ACCEPTED
01-14-00123-cv
FIRST COURT OF APPEALS
HOUSTON, TEXAS
1/2/2015 9:54:51 AM
CHRISTOPHER PRIN
CLERK

## IN THE COURT OF APPEALS

## FIRST JUDICIAL DISTRICT

### HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
1/2/2015 9:54:51 AM
CHRISTOPHER A. PRINE
Clerk

**APPEAL NUMBER 01-14-00123-CV**
**Trial Court Cause Number: 2013-29304**

On Appeal from the 246th District Court of Harris County, Texas

| | | |
|---|---|---|
| KAYLA MARIE McCARTNEY | } | APPELLANT |
| | } | |
| V. | } | |
| | } | |
| JOSHUA NEAL POLK | } | APPELLEE |

### APPELLEE'S MOTION FOR REHEARING EN BANC

Counsel for Appellee:

Jay M. Wright
204 West Davis Street
Conroe, Texas 77301
Telephone: 936-494-2462
Telecopier: 936-494-1976
Email: jaywrightatty@hotmail.com
Attorney for Appeal

Counsel for Appellant:

Timothy Hootman
2402 Pease Street
Houston, Texas 77003
Telephone: 713-247-9548
Telecopier: 713-583-9523
Email: thootman2000@yahoo.com


Lianna Garza
1010 Lamar, Suite 860
Houston, Texas 77002
Attorneys for Appeal

1

## LIST OF PARTIES AND COUNSEL

Appellant:

KAYLA MARIE McCARTNEY
17855 Camp Cove Drive
Cypress, Texas 77429

Appellee:

JOSHUA NEAL POLK
17015 Carrol Lane
Willis, Texas 77378

Counsel for Appellant:

Timothy A. Hootman
2402 Pease Street
Houston, Texas 77003
Telephone: 713-247-9548
Telecopier: 713-583-9523
Email: thootman2000@yahoo.com
Attorney for Appeal

Counsel for Appellee:

Jay M. Wright
Attorney at Law
204 West Davis Street
Conroe, Texas 77301
Telephone: 936-494-2462
Telecopier: 936-494-1976
Email: jaywrightatty@hotmail.com
Attorney at trial and Appeal

Liana Garza
1010 Lamar, Suite 860
Houston, Texas 77002
Attorney for Trial and Appeal

Office of the Attorney General, Child Support Division
Treasea Trevino, Assistant Attorney General
4600 Highway 6 North, Suite 300
Houston, Texas 77084
Attorney for Trial only

# TABLE OF CONTENTS

Cover Page                                                          1

List of Parties and Counsel                                         2

Table of Contents                                                   3

List of Authorities                                                 4

Motion For Rehearing En Bank on Appeal                           5,6,7

Certificate of Word Count                                          7,8

Certificate of Service                                              8

Appendix Cover Sheet                                               9

Appendix Exhibit One Cover with Judgment                          10

Appendix Exhibit Two Cover with Opinion                           11

Appendix Exhibit Three Cover with Dissenting Opinion              12

# LIST OF AUTHORITIES

| Cases | Page |
|---|---|
| Butnaru v. Ford Motor Co., 84 S.W3d 198 (Tex. 2002) | 5 |
| City of Keller v. Wilson, 168 S.W.3d 802 (Tex. 2005) | 5 |
| In Re H.S.B., 401 S.W.3d 77 (Tex. App.--Houston [14th Dist.] 2011, no pet.) | 5,6 |

Statutes, Rules and Codes

| | |
|---|---|
| Rule 49.7, Tex. R. App. Proc. | 5 |

Treatises, Books and Publications

| | |
|---|---|
| Bill O'Reilly, Culture Warrior, Broadway Books publishing, New York 2006 | 7 |

## MOTION FOR REHEARING EN BANC

COMES NOW the Appellee, JOSHUA POLK, pursuant to Rule 49.7, Tex. R. App. Proc., and moves this Honorable Court of Appeals to re-hear this case En Banc for the reasons set forth below.

The reasons the Court of Appeals should re-hear and re-consider this case En Banc is due to the major impact this ruling will have on family law cases throughout the State of Texas. The judgment of the Court is filed as Appendix Exhibit One. The Majority Opinion of the Court is filed as Appendix Exhibit Two. The Dissenting Opinion is filed as Appendix Exhibit Three.

A majority of the panel in this case properly cited the burden on the Appellant in this case that she must prove "(1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005)." Appendix Exhibit Two, Opinion at p. 10.

The majority then reaches an historic decision that flies directly in the face of two Supreme Court holdings: 1. City of Keller v. Wilson, 168 S.W.3d 802, 807 (Tex. 2005); and there is no basis for concluding that the trial court abused its discretion in granting the name change, according to the holding in Butnaru v. Ford Motor Co., 84 S.W.3d 198, 211(Tex. 2002), because "The trial court does not abuse its discretion if some evidence reasonably supports the trial court's decision." It also runs contrary to the holding of the 14th Court of Appeals in In Re H.S.B., 401 S.W.3d 77 (Tex. App.--Houston [14th Dist.]

5

2011, no pet.)

The majority in this case is attempting to overturn yet another, historic tradition that is the pillar of the American family by this decision. Having siblings carry the name of the father is one of foundations of the Anglo-American tradition going all the way back to the establishment of "Coats of Arms" identifying families based upon the parentage of the father. This decision is a major volley in the attack on the traditional American family coming from--of all places--the State of Texas. The Appellant, mother of the child, has no other children and, therefore, no other siblings with which this child must develop a relationship. It is clearly in this child's best interest to identify with and develop a relationship with his sibling.

The Dissenting Opinion correctly points out that "Because the trial court did not abuse its discretion in determining that fostering a sibling relationship merited a change in the child's name and was in the child's best interest, I respectfully dissent." Appendix Exhibit Three, Dissenting Opinion at 1-2. The impact of the decision is to tell trial court judges that this factor (fostering a sibling relationship) has no weight and cannot be considered as a basis for changing the name of a child.

The intended effect is to destroy the Anglo-American tradition of identifying family members by the Father's last name and to further muddy the waters as to what constitutes "family identity" in our society. See, for example, "I have chosen to jump into the fray and become a warrior in the vicious culture war that is currently under way in the United States of America. And war is exactly the right term. On one side of the battlefield are the armies of the traditionalists like me, people who believe the United States was well founded and has done enormous good for the world. On the other side are

the committed forces of the secular-progressive movement that want to change America dramatically: mold it in the image of Western Europe." p. 1, *Bill O'Reilly, Culture Warrior*, Broadway Books publishing, New York, 2006. This court should be engaged in preserving American traditions that support the American family and not attempting to destroy family bonds.

Because the Majority Opinion ignores Supreme Court holdings and attempts to strike at the heart of American family traditions, the entire Court of Appeals En Banc should rehear and re-consider this case, withdraw the Majority Opinion, and substitute an En Banc Judgment and Opinion affirming the trial court's decision in this case.

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellee respectfully requests the Court En Banc to rehear and reconsider the Majority ruling in this Appeal, withdraw the Majority Opinion, and substitute an En Banc Judgment and Opinion affirming the trial court's decision in this case and grant any such further relief to which Appellee may be entitled.

Respectfully Submitted,

Jay M. Wright
State Bar No. 22041800
204 West Davis Street
Conroe, Texas 77301
Telephone: 936-494-2462
Telecopier: 936-494-1976
Email: jaywrightatty@hotmail.com
ATTORNEY FOR APPELLEE

## CERTIFICATE OF WORD COUNT

I hereby certify that, on December 31, 2014, in accordance with Rule 9.5 of the

Rules of Appellate Procedure, that the number of words contained in this Motion For Rehearing En Banc are 1,271 according to the computer program used to prepare this document.

_____
Jay M. Wright

## CERTIFICATE OF SERVICE

I hereby certify that on December 31, 2014, a true and correct copy of the above and foregoing Motion For Rehearing En Banc of Appellee was served upon Timothy A. Hootman, 2402 Pease Street, Houston, Texas 77003, thootman2000@yahoo.com and Treasea Trevino, Assistant Attorney General, Child Support Division, 4600 Highway 6 North, Suite 300, Houston, Texas 77084, FAX: 713-281-345-9457, via electronic notification and first-class U.S. mail, in accordance with the Rules of Appellate Procedure.

_____
Jay M. Wright

# IN THE COURT OF APPEALS

## FIRST JUDICIAL DISTRICT

### HOUSTON, TEXAS

**APPEAL NUMBER 01-14-00123-CV**
**Trial Court Cause Number: 2013-29304**

___On Appeal from the 246th District Court of Harris County, Texas___

| | | |
|---|---|---|
| KAYLA MARIE McCARTNEY | } | APPELLANT |
| | } | |
| V. | } | |
| | } | |
| JOSHUA NEAL POLK | } | APPELLEE |

COVER SHEET FOR APPENDIX OF EXHIBITS

EXHIBIT ONE: JUDGMENT

EXHIBIT TWO: OPINION

EXHIBIT THREE: DISSENTING OPINION

APPENDIX EXHIBIT ONE

JUDGMENT



# JUDGMENT

## Court of Appeals

## First District of Texas

NO. 01-14-00123-CV

IN THE INTEREST OF A.E.M., A Minor Child

Appeal from the 246th District Court of Harris County. (Tr. Ct. 2013-29304).

This case is an appeal from the final judgment signed by the trial court on January 14, 2014. After submitting the case on the appellate record and the arguments properly raised by the parties, the Court holds that there was error in the trial court's judgment in the following respect: it orders the surname of the child to be changed. Accordingly, the Court **reverses** the trial court's judgment and **renders** judgment that the child's surname remains McCartney.

The Court orders that the appellee, Joshua Neal Polk, pay all appellate costs.

The Court **orders** that this decision be certified below for observance.

Judgment rendered December 16, 2014.

Panel consists of Justices Higley, Bland, and Sharp. Opinion delivered by Justice Higley. Justice Bland, dissenting.

APPENDIX EXHIBIT TWO

OPINION

Opinion issued December 16, 2014



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00123-CV

———————————

## IN THE INTEREST OF A.E.M., A Minor Child

———————————

On Appeal from the 246th District Court
Harris County, Texas
Trial Court Case No. 2013-29304

———————————

## OPINION

After meeting with an officer from the Child Support Division of the Office

of the Attorney General, the parents of A.E.M. could not reach an agreement on all

the terms for a child support and custody order. The only issue left unresolved was

whether the child's last name should be changed to his father's last name. After a

hearing, the trial court ordered the child's surname to include his father's surname.

In three issues on appeal, the mother argues (1) the trial court lacked subject-matter jurisdiction to order the child's last name to be changed, (2) the evidence is legally insufficient to support the change of the child's last name, and (3) the written judgment does not conform to the trial court's orally rendered judgment.

We reverse and render.

## Background

After A.E.M. was born, his parents attended a negotiation conference with an officer from the Child Support Division of the Office of the Attorney General. The parents reached agreement on most of the issues discussed, but could not reach an agreement on the last name of the child. The father wanted the child's last name changed to his last name. The mother wanted the child to keep her last name. The Office of the Attorney General filed a petition for confirmation of a non-agreed order with the trial court. The father filed a request for a hearing on the non-agreed issues. Specifically, the father requested the trial court to resolve his request to change the child's name to his last name.

The trial court held a hearing. At the hearing, the father testified that he wanted to change the child's name to his last name because he had a daughter who had his last name and he wanted them to have the same last name. The father explained that he had visitation rights with his daughter. The father and mother in this case had agreed that the father would also have visitation rights with A.E.M.

2

The father testified that he also wanted the child to have his last name so there would be someone to carry on his family name and so that the child would have his name if the child entered the military. He acknowledged, however, that the child's keeping his mother's last name would not be detrimental to the child.

The mother testified that her last name held respect in the community because her father had run a business for 33 years in the small town where she lived. She also testified that the father had indicated he was attending visitation periods only in an attempt to get their son's last name changed to his and had told her at, one time, that he was willing to sign his parental rights away.

The trial court's judgment orders the child's last name to be changed to the father's last name.

## Subject-Matter Jurisdiction

In her first issue, the mother asserts that the trial court lacked subject-matter jurisdiction to order the child's last name to be changed.

The dispute over their child's last name arose during meetings with the Child Support Division of the Office of the Attorney General. Pursuant to Chapter 233 of the Texas Family Code, the Office of the Attorney General is authorized to attempt expedited administrative actions concerning child support and medical support obligations. *See* TEX. FAM. CODE ANN. § 233.001 (Vernon 2014) (explaining purpose of chapter is to authorize "Title IV-D" agency to take

3

expedited administrative actions concerning child support and medical support obligations); *see also* TEX. FAM. CODE ANN. § 231.001(Vernon 2014) (designating Office of the Attorney General as Title IV-D agency in Texas). If, as here, the parties cannot reach complete agreement in the administrative process, the Office of the Attorney General may file a petition for confirmation of a non-agreed child support order. *Id.* §§ 233.012(3), .020 (Vernon 2014). After the petition has been filed, certain strict deadlines apply before a hearing is held on the issues that remain outstanding. *See id.* §§ 233.023, .026 (Vernon 2014).

The thrust of the mother's complaint is that the Office of the Attorney General lacked the authority to negotiate the last name of the child during the administrative process and, therefore, the trial court lacked jurisdiction to consider the matter in the subsequent hearing. We conclude that the trial court had jurisdiction to determine the last name of the child.

Generally, family courts in Texas have "the jurisdiction and power provided for district courts by the constitution and laws of this state." TEX. GOV'T CODE ANN. § 24.601(a) (Vernon 2004). Additionally, they have primary responsibility for cases involving family law matters. *Id.* § 24.601(b). The law on changing a child's name is contained in the family code. *See* TEX. FAM. CODE ANN. §§ 45.001–.005 (Vernon 2014). Accordingly, it is undisputable that the family court generally had jurisdiction to determine the child's last name.

The question we must address, then, is whether anything in Chapter 233 of the Family Code excluded the consideration of the child's name from the trial court's jurisdiction. We apply statutory construction principles in determining whether a statutory requirement is jurisdictional. *City of DeSoto v. White*, 288 S.W.3d 389, 394 (Tex. 2009). We review the matter de novo. *Id.* "We resist classifying a provision as jurisdictional absent clear legislative intent to that effect." *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 391 (Tex. 2014). "Since the Legislature is bound to know the consequences of making a requirement jurisdictional, one must ask, in trying to determine legislative intent, whether the Legislature intended those consequences." *Univ. of Tex. Sw. Med. Ctr. at Dall. v. Loutzenhiser*, 140 S.W.3d 351, 359 (Tex. 2004), *superseded by statute on other grounds as recognized in Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 511 (Tex. 2012). In determining the legislative intent, we consider "(1) the plain meaning of the statute; (2) 'the presence or absence of specific consequences for noncompliance'; (3) the purpose of the statute; and (4) 'the consequences that result from each possible interpretation.'" *Crosstex Energy*, 430 S.W.3d at 392 (quoting *White*, 288 S.W.3d at 396).

In determining whether Chapter 233 limits the jurisdiction of the trial court, we must look at the plain language of the statute. Section 233.001 provides that the purpose of the procedures specified in the chapter is to enable the Office of the

5

Attorney General "to take expedited administrative actions to establish, modify, and enforce child support or medical support obligations, to determine parentage, or to take any other action authorized or required under Part D, Title IV, of the federal Social Security Act (42 U.S.C. Section 652 et seq.) and Chapter 231." TEX. FAM. CODE ANN. § 233.001(a).

The purpose of the administrative conference between the parties "is to provide an opportunity to reach an agreement on a child support order." *Id.* § 233.012(1). The child support review order is meant to cover topics such as "current child support, medical support, a determination of any arrearages or retroactive support, and, if not otherwise ordered, income withholding." *Id.* § 233.017(a).

However, if the parties do not agree on an order, the child support review order "may specify and reserve for the court at the confirmation hearing unresolved issues relating to conservatorship or possession of a child." *Id.* § 233.017(d). At the hearing on the non-agreed order, "any issues in dispute shall be heard in a trial de novo." *Id.* § 233.025(b).

Even if we concluded that the administrative conference can only cover matters relating to paternity determinations, child support obligations, and medical support obligations, the hearing before the trial court on the unresolved issues is intended to allow matters beyond those limitations, including conservatorship and

6

possession of a child. *See id.* § 233.017(d). While it does not specifically include name changes as a matter that can be resolved by the trial court, the statute also does not exclude it. *See id.; see also Crosstex Energy*, 430 S.W.3d at 392 (holding presence or absence of specific consequences for noncompliance is factor for determining whether statute is jurisdictional). Moreover, even if we interpreted these statutes to restrict the considerations to be taken by the trial court, nothing in the statutory framework suggests the limitations are jurisdictional. *See White*, 288 S.W.3d at 395 (holding fact that statutory requirement is mandatory does not mean compliance with it is jurisdictional).

At best, the fact that changing a child's name was not identified as a topic to be resolved in the Chapter 233 hearing before the trial court suggests that it was not generally intended to be resolved in the hearing. From there, there is no more than a weak inference to conclude that the legislature intended this to be a strict jurisdictional limitation. *See Crosstex Energy*, 430 S.W.3d at 392 ("Although the plain meaning might suggest a jurisdictional bar, it does not meet the requisite level of clarity to establish the statute as jurisdictional.").

Finally, we see no negative consequences that might arise from holding any limitations on the hearing are not jurisdictional. *See id.* (holding consequences that result from each possible interpretation is factor for determining whether statute is jurisdictional). Even if the name of the child is not generally intended to be part of

7

the trial court's hearing, any injured party can object to its inclusion. *See id.* at 391 ("A party may waive a mandatory, non-jurisdictional requirement by failing to timely object."). Here, instead, the mother actively participated in presenting evidence on the matter. *See Moore v. Altra Energy Technologies, Inc.*, 321 S.W.3d 727, 734 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (holding matter is tried by consent if record shows all parties understood issue was developed in trial and no party objected).

In contrast, making the matter jurisdictional would open it to indefinite collateral attack and leading to uncertainty in matters that the parties actively presented to the trial court. *See Crosstex Energy*, 430 S.W.3d at 393 (holding it does not follow that creation of procedural bar means legislature wanted judgment attacked in perpetuity); *White*, 288 S.W.3d at 393 (holding that deeming provision jurisdictional opens way to making judgments vulnerable to delayed attack for variety of irregularities that should be sealed after judgment).

We hold there was no jurisdictional bar to the trial court's determination of the child's last name. We overrule the mother's first issue.

### Legal Sufficiency

In her second issue, the mother argues that the evidence is legally insufficient to support the change of the child's last name.

8

## A. Standard of Review

We review a trial court's ruling on a request to change the name of a child for an abuse of discretion. *In re H.S.B.*, 401 S.W.3d 77, 81 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *In re Guthrie*, 45 S.W.3d 719, 723 (Tex. App.—Dallas 2001, pet. denied). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles. *Tex. Dept. of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990); *In re H.S.B.*, 401 S.W.3d at 81. "The factfinder is the sole judge of the credibility of the witnesses and the weight to give their testimony." *Bush v. Bush*, 336 S.W.3d 722, 730 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

When reviewing the sufficiency of the evidence for an-abuse-of-discretion review, the sufficiency ground is not an independent issue. *See Moreno v. Perez*, 363 S.W.3d 725, 735 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *In re H.S.B.*, 401 S.W.3d at 81. Instead, the sufficiency challenge is incorporated into the abuse of discretion review. *Moreno*, 363 S.W.3d at 735; *In re H.S.B.*, 401 S.W.3d at 81. In this situation, "[o]ur analysis employs a two-pronged inquiry: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion." *Moreno*, 363 S.W.3d at 735 (citing *McGuire v. McGuire*, 4 S.W.3d 382, 387 n.2 (Tex. App.—Houston [1st Dist.] 1999, no pet.)).

9

A party challenging the legal sufficiency of the evidence on an issue for which it did not carry the burden of proof will prevail if (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). "More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (internal quotations omitted).

**B.    Analysis**

The father sought to change A.E.M.'s last name to his last name under authority of Chapter 45 of the Texas Family Code. *See* TEX. FAM. CODE ANN. §§ 45.001–.005 (Vernon 2014). Section 45.004 provides, in pertinent part, that "[t]he court may change the name of a child if the change is in the best interest of the child . . . ." TEX. FAM. CODE ANN. § 45.004(a)(1). While neither parent has any specific right to name the child, once the child has been named, the name will not be changed unless the complaining parent proves there is good reason to change the name. *In re Guthrie*, 45 S.W.3d at 724. "The general rule is that courts

10

will exercise the power to change a child's name reluctantly and only when the substantial welfare of the child requires it." *Id.* at 723; *see also In re H.S.B.*, 401 S.W.3d at 83 ("In Texas, courts have held that a child's name should not be changed unless the party seeking the change shows that the original name is detrimental to the child.").

The statutes permit a name change when it is "in the best interest of the child." TEX. FAM. CODE ANN. § 45.004(a)(1). Accordingly, the only facts relevant to our review of the trial court's determination are the facts concerning the child's best interest; the interests of the parents are not relevant. *In re H.S.B.*, 401 S.W.3d at 83. The Fourteenth Court of Appeals, in *In re H.S.B.*, reviewed the various balancing tests used to determine whether a name change was warranted. *See id.* at 84–85. In doing so, it rejected factors unrelated to the best interest of the child. *See id.* (rejecting embarrassment, inconvenience, or confusion suffered by custodial parent; delay in requesting name change; and parents' financial support as factors to be considered). We agree with our sister court that these factors do not belong in a balancing test focused on determining the best interest of the child. Accordingly, we adopt the balancing test announced in *In re H.S.B. See id.* at 84. Those factors are:

> (1) the name that would best avoid anxiety, embarrassment, inconvenience, confusion, or disruption for the child, which may include consideration of parental misconduct and the

11

degree of community respect (or disrespect) associated with the name,

(2) the name that would best help the child's associational identity within a family unit, which may include whether a change in name would positively or negatively affect the bond between the child and either parent or the parents' families,

(3) assurances by the parent whose surname the child will bear that the parent will not change his or her surname at a later time,

(4) the length of time the child has used one surname and the level of identity the child has with the surname,

(5) the child's preference, along with the age and maturity of the child, and

(6) whether either parent is motivated by concerns other than the child's best interest—for example, an attempt to alienate the child from the other parent.

*Id.*

For the first factor, there was little indication in the record that either parent's name would avoid any embarrassment or disruption for the child or that there was a significant amount of respect or disrespect for either name in the community. The mother testified that her last name held respect in the community because her father had run a business for 33 years in the small town where she lived. The trial court could have discounted this testimony, however. *See City of Keller*, 168 S.W.3d at 819, 827 (holding fact finder is sole judge of credibility of witnesses and weight to give their testimony; legal sufficiency review must credit

12

favorable evidence if reasonable fact finder could, and disregard contrary evidence unless reasonable fact finder could not).

The father argues that this factor weighs in his favor because if he "takes the child to the doctor, takes the child somewhere with his sister, or attends the child at school, it will be better for the child to be identified with [the father's] last name." The father overlooks the fact that the mother is the one with the greatest custodial possession of the child and, therefore, is the one who will most often take the child to the doctor, take the child out in public, and take the child to school. Based on the father's argument, then, this factor weighs in favor of the *mother*. Viewing the record in the light most favorable to the ruling, however, we will consider this factor to be neutral.

For the second factor, the father testified that he had a daughter and that he wanted them to get to know each other and have the same last name. In *In re H.S.B.*, the court recognized that sharing a last name with a full or half-blood sibling was relevant to determining whether the last name should be changed. 401 S.W.3d at 86–87. In that case, the child in question would spend the majority of his time with his mother and older brother, both of whom had the same last name. *Id.* at 80, 87. The child in question and his older brother were close in age and would regularly attend the same church and the same schools. *Id.* The court held

13

that giving the child the mother's last name "would more strongly associate H.S.B. with a family unit consisting of his brother and his custodial parent." *Id.* at 87.

In this case, in contrast, the father is not the custodial parent for A.E.M. or for his daughter. He only has periodic visitation rights for both, and there was no testimony concerning how much these visitation times would overlap. The father and mother in this case do not live in the same town or in surrounding towns, and there is no indication of where the father's daughter lives. There is also no indication of the daughter's age.

In short, there is little evidence that giving A.E.M. the same last name as his half-sister "would more strongly associate [him] with a family unit." *Id.* Accordingly, while there is some evidence in the father's favor for this factor, the overall significance of the evidence is slight.

The father testified that he also wanted the child to have his last name so there would be someone to carry on his family name and so that the child would have his name if he entered the military. The father did not explain, however, how it would be more beneficial to the child to have his last name instead of his mother's last name in the event of entering the military or having children of his own. And the father's personal desires to have his family name continued or be represented in the military are not relevant inquiries. *See id.* at 84 (rejecting factors that "inappropriately shift the inquiry to the parents' interests").

14

The dissent criticizes our resolution of this factor, claiming we have "accept[ed] the mother's reasoning and reject[ed] the father's." From this, the dissent characterizes our holding as an improper displacement of the trial court's responsibility to resolve conflicts in the testimony. This is not what we have done, however. It was within the trial court's discretion to disbelieve the mother's testimony concerning the child's associational identity with the family unit. *See Bush*, 336 S.W.3d at 730 (holding factfinder is sole judge of credibility of witnesses and weight to give their testimony). In accordance, we have not identified, let alone not placed any reliance on, the mother's testimony.

Instead, we have focused solely on the evidentiary significance of the father's testimony. Because the father provided little to no information about the other sibling and the amount of time she could potentially spend with A.E.M. to develop any relationship, we have held that the testimony simply identifying another sibling who might occasionally see A.E.M. does not have strong evidentiary significance.

In contrast, the dissent would hold that the mere existence of another child bearing a parent's last name would be enough to warrant requiring the child's name to be changed. Such a holding stands in stark contrast to the long-standing "general rule . . . that courts will exercise the power to change a child's name reluctantly and only when the substantial welfare of the child requires it." *In re*

15

*Guthrie*, 45 S.W.3d at 724. The simple existence of another child who bears the father's last name and who might periodically see A.E.M. does not establish that the substantial welfare of A.E.M. requires a name change.

For the third factor, neither parent testified about the possibility of changing their last name in the future. *See id.* This factor is neutral.

For the fourth and fifth factors, the child was nearly one-and-one-half years old at the time of the hearing. The child had no level of identity with the last name and had no ability to express a preference for his last name. *See id.* This factor is neutral.

For the final factor, there is little evidence to indicate that either parent was motivated by concerns other than the child's best interest. The mother testified that the father had indicated he was only attending visitation periods in an attempt to get their son's last name changed to his and had told her at one time that he was willing to sign his parental rights away. But the trial court could have discounted this testimony. *See City of Keller*, 168 S.W.3d at 819, 827. Accordingly, this factor is neutral.

In total, we have five neutral factors and one factor that slightly favors the father. "'The power to change the name of a minor child is exercised reluctantly and only when necessitated by the substantial welfare of the child.'" *In re H.S.B.*, 401 S.W.3d at 83 (quoting *In re J.K.*, 922 S.W.2d 220, 222 (Tex. App.—San

Antonio 1996, no writ)); *accord In re Guthrie*, 45 S.W.3d at 724. Given that the father presented only some slight evidence for one factor of the test for establishing the propriety of name changes, we hold that the father did not carry his burden of establishing that the substantial welfare of the child requires the name change. *See City of Keller*, 168 S.W.3d at 810 (holding legal sufficiency challenge will be sustained if party that did not carry burden of proof shows evidence offered to prove vital fact is no more than scintilla); *Havner*, 953 S.W.2d at 711 (holding more than scintilla of evidence exists when evidence rises to level that would enable fair-minded people to differ in conclusions).

We sustain the mother's second issue.[*]

## Conclusion

We reverse the portion of the judgment changing the last name of A.E.M. and render a judgment that his last name remains the same.

Laura Carter Higley
Justice

Panel consists of Justices Higley, Bland, and Sharp.

Justice Bland, dissenting.

---

[*] Because the mother's third issue would not provide her with greater relief, we do not need to reach it. *See* TEX. R. APP. P. 47.1.

APPENDIX EXHIBIT THREE

DISSENTING OPINION

Opinion issued December 16, 2014.



In The

## Court of Appeals

For The

## First District of Texas

———————————

NO. 01-14-00123-CV

———————————

IN THE INTEREST OF A.E.M., A Minor Child

———————————————————————————————————

On Appeal from the 246th District Court
Harris County, Texas
Trial Court Case No. 2013-29304

———————————————————————————————————

## DISSENTING OPINION

Faced with a Solomonic choice, the trial court ordered a child's name to

include his father's surname alongside his mother's. The child's mother argues,

and the majority holds, that the evidence is insufficient to support its decision.

Because the trial court did not abuse its discretion in determining that fostering a

sibling relationship merited a change in the child's name and was in the child's best interest, I respectfully dissent.

We review a trial court's ruling to change a child's name under an abuse of discretion standard. *In re H.S.B.*, 401 S.W.3d 77, 81 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *In re Guthrie*, 45 S.W.3d 719, 723 (Tex. App.—Dallas 2001, pet. denied). A sufficiency challenge is incorporated into this review. *Moreno v. Perez*, 363 S.W.3d 725, 735 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *In re H.S.B.*, 401 S.W.3d at 81–82. We determine "(1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion." *Moreno v. Perez*, 363 S.W.3d 725, 735 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *McGuire v. McGuire*, 4 S.W.3d 382, 387 n.2 (Tex. App.—Houston [1st Dist.] 1999, no pet.)); *see also In re H.S.B.*, 401 S.W.3d at 82. In determining whether a name change is in a child's best interest, we defer to the trial court's resolution of credibility and conflicts in the witness's testimony. *See In re H.S.B.*, 401 S.W.3d at 87 (finding that the trial court had the discretion to resolve conflicts in the testimony to determine whether the father maintained a significant relationship with the child).

Section 45.004 provides that "[t]he court may change the name of a child if the change is in the best interest of the child. . . ." TEX. FAM. CODE ANN. § 45.004(a)(1) (West 2014). As the majority observes, this determination involves

2

a number of factors. *See also In re H.S.B.*, 401 S.W.3d at 84. However, the "relative importance of these factors . . . will depend on the unique facts and circumstances of each case." *Id.* As with any evaluation of evidence, the number of factors favoring the trial court's ruling should not control the analysis; rather, the logical force of the facts and inferences from them should.

The majority acknowledges that including the father's last name could more strongly associate the child with a family unit—in particular, his half–sibling. It concedes that the remaining factors are neutral in their factual basis, and depend heavily on credibility determinations of the testimony from the father and the mother. Both parents had reason and motive to urge their respective positions; the relative weight to accord their testimony on the highly subjective nature of the best interest in naming their child was uniquely within the trial court's purview—it saw their demeanor and heard their words; we did not.

Leaving the parent's testimony aside, the trial court heard one objective piece of evidence—that of a sibling relationship with another child—evidence that standing alone favors the trial court's ruling. In *In re H.S.B.*, our sister court reasoned that because the mother had another child, a shared last name between half–siblings would foster the sibling relationship. *Id.* at 86–87. In that case, the father had no other children, and the court determined that the use of the mother's

surname would more strongly associate the child with a family unit of the sibling and parent. *Id.* at 87.

In this case, the parties contested the evidence of an association with a family unit. The child's father has visitation both with the child and the child's half–sibling. He exercised his visitation, according to a "step–up" visitation plan in place. He testified that he wants his children to get to know one another and develop a relationship. The mother does not have other children. She testified that the father attended visitation only to procure a name change in his favor and that the child would reside mainly with her and her family. The majority accepts the mother's reasoning and rejects the father's, but it was the trial judge as the fact finder who was free to resolve the parent's conflicting testimony. *See id.* (finding that the trial court had the discretion to resolve conflicts in the testimony in determining whether the father maintained a significant relationship with the child).

The majority dismisses the notion of importance of the child's sibling relationship with another child. But the trial court reasonably could have found that a shared surname with a half–sibling would further this sibling relationship. With objective evidence of a sibling relationship, the evidence is legally sufficient to support the trial court's ruling. Because the logical force of the testimony presented supports its decision, we should hold that the trial court did not abuse its

discretion in ordering the addition of the father's surname to his child's name. *See Moreno v. Perez*, 363 S.W.3d at 735.

*Oral Pronouncement*

In her third issue, which the majority does not reach, the child's mother argues that the trial court's written judgment does not conform to its orally rendered judgment. In family law cases, a court renders judgment when it announces its decision, either in writing or orally in open court. *Barton v. Gillespie*, 178 S.W.3d 121, 126 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *In re Fuselier*, 56 S.W.3d 265, 268 (Tex. App.—Houston [1st Dist.] 2001, orig. proceeding)); *see also In re R.A.H.*, 130 S.W.3d 68, 70 (Tex. 2004) ("[J]udgment is rendered 'when the decision is officially announced orally in open court, by memorandum filed with the clerk, or otherwise announced publicly.'") (quoting *Garza v. Tex. Alcoholic Beverage Comm'n*, 89 S.W.3d 1, 7 (Tex. 2002)). In the case of an oral rendition, the judgment becomes effective immediately; the signing and entry of the judgment are only ministerial acts. *Dunn v. Dunn*, 439 S.W.2d 830, 832–33 (Tex. 1969); *see Maldonado v. Rosario*, No. 01–12–01071–CV, 2013 WL 1316385, at *2 (Tex. App.—Houston [1st Dist.] Apr. 2, 2013, no pet.) (per curiam) ("Once a divorce is granted by an oral pronouncement in which the trial court finally adjudicates the rights of the parties, then entry of a written

judgment is purely a ministerial act."). The father in this case does not contest that the oral pronouncement governs.

At the hearing, the court orally pronounced a judgment "to add [the father's last name] to the surname." The final order states that "[t]he birth records . . . shall be amended to show . . . the child's surname as [the father's last name]." Because the oral pronouncement controls, we should sustain the mother's objection to the written order and modify it to include the mother's surname first, then the father's surname. *See Dunn*, 439 S.W.2d at 832–33; *Barton*, 178 S.W.3d at 126.

## Conclusion

Because the trial court acted within its discretion in resolving the parent's dispute as to the naming of their child, we should affirm its ruling. As the majority instead overturns it, I respectfully dissent.

Jane Bland
Justice

Panel consists of Justices Higley, Bland, and Sharp.

Justice Bland, dissenting.

6