Harvey Brown, Justice
This is a dispute over the name change of a minor. The minor's mother, Adaline Werthwein, contends that the trial court abused its discretion by granting the request of the father, Craig Workman, to change the last name of their two-year-old son (pseudonymously referred to as "Michael") from Werthwein to Workman without legally or factually sufficient evidence that the name change was in Michael's best interest. Werthwein also contends that the trial court erroneously shifted the burden of proof to her to disprove that a name change was in Michael's best interest, and, in doing so, revealed a bias in favor of the father.
Because there is adequate evidence to support the trial court's best-interest determination and there is no indication that the trial court shifted the burden of proof, we affirm.
Background
Werthwein and Workman married in June 2012. Werthwein, who is a real estate agent, continued using Werthwein as her last name during the marriage, both socially and professionally. She listed her last name as Werthwein on real estate signs and in professional and personal documents, including tax documents filed with the government. She listed Workman as her last name on her driver's license.
*753 Approximately six months into the marriage, Werthwein became pregnant with Michael. Werthwein and Workman separated before Michael was born. The two parties testified differently regarding the events leading to their separation, Michael's birth, and the selection of Michael's last name.
The parties dispute what Workman's reaction was to the pregnancy. According to Workman, he doubted that he was the father of the child because he had received a medical opinion that led him to believe he could not have biological children. Workman testified that he confronted Werthwein about the child's paternity and that she said the child would be of a different race than Workman.
Werthwein denied Workman's assertions. She testified that the couple had been actively trying to get pregnant after having an earlier pregnancy end in miscarriage. She said that Workman was "very excited" about the pregnancy and that the couple had happily announced it to friends with an "It's a Boy" sign. According to Werthwein, there was never a conversation between the two about Michael possibly not being Workman's biological child. Werthwein testified that, as the pregnancy progressed in early 2013, Workman unexpectedly began denying paternity to friends and then moved out.
In May 2013, Werthwein filed for divorce, listing herself and Workman as the parents of the unborn child. Workman countersued, denied paternity, and requested genetic paternity testing. Workman did not request in his original counter-petition for divorce that Michael's last name be changed to Workman. At that point, paternity was still undetermined.
In August 2013, according to Werthwein, Workman told her to not contact him again. Communication stopped.
Michael was born the next month, in September 2013. Workman was not at the delivery. There is no indication in the record whether Workman knew Michael had been born.
When Werthwein was presented paperwork at the hospital to obtain Michael's birth certificate, she listed Workman as Michael's father but indicated that Michael's last name would be Werthwein, not Workman. Werthwein testified that she gave Michael her last name because, at that time, "his father was denying him." Upon questioning by the trial court, she stated, "I don't really know many women that are going to name their child after a man that's walked out on the marriage ... [and] denied ... paternity of the child."
A paternity test was later conducted that confirmed Workman is Michael's biological father. Divorce proceedings continued, still without Workman requesting Michael's last name be changed. The divorce became final in June 2014, when Michael was about nine months old.
More than a year later, in September 2015, Workman sought to modify conservatorship to allow more access to Michael. Werthwein filed a counter-petition, seeking additional child support. Workman then amended his petition in January 2016, when Michael was about two and one-half years old, to request Michael's last name be changed to Workman.
According to Werthwein, Workman never mentioned wanting Michael to have his last name until he amended his petition in January 2016, after Michael had accumulated more than two years of experience using the last name Worthwein in his community and on his official documents, including his certificate of baptism and his school and medical records. Werthwein argued that it would cause Michael confusion to change his name after he had begun to identify with the last name Werthwein.
*754 The other modification issues were resolved by the parties; however, they could not agree on the issue of Michael's last name. A hearing was held in June 2016 for the trial court to determine the last name that would be in Michael's best interest. The parents were the only witnesses, and their testimony directly contradicted each other's. The trial court issued a ruling, finding that Michael's last name should be changed to Workman and that it was in Michael's best interest for his last name to be Workman.
Werthwein appeals.
Sufficiency of Evidence to Support Name Change
In her first issue, Werthwein argues that the trial court abused its discretion in granting the name change because there was insufficient evidence that changing Michael's name was in his best interest.
A. Statutory basis for minor name change and standard that applies
Section 45.004 of the Family Code states that a "court may order the name of a child changed if ... the change is in the best interest of the child." TEX. FAM. CODE § 45.004(a)(1) ; see id. § 160.636(e) (providing that courts adjudicating parentage issues may, upon "request of a party and for good cause shown ... order that the name of the child be changed"). Parental interests are irrelevant; the child's best interest is determinative. Anderson v. Dainard , 478 S.W.3d 147, 151 (Tex. App.-Houston [1st Dist.] 2015, no pet.).
To evaluate the best interest of the child in connection with a requested name change, we consider six nonexclusive factors, keeping in mind that their "relative importance ... will depend on the unique facts and circumstances of each case." Anderson , 478 S.W.3d at 151 (quoting In re H.S.B. , 401 S.W.3d 77, 84 (Tex. App.-Houston [14th Dist.] 2011, no pet.). The nonexclusive factors are
(1) the name that would best avoid anxiety, embarrassment, inconvenience, confusion, or disruption for the child, which may include consideration of parental misconduct and the degree of community respect (or disrespect) associated with the name;
(2) the name that would best help the child's associational identity within a family unit, which may include whether a change in name would positively or negatively affect the bond between the child and either parent or the parents' families;
(3) assurances by the parent whose last name the child will bear that the parent will not change his or her last name at a later time;
(4) the length of time the child has used one last name and the level of identity the child has with the last name;
(5) the child's preference, along with the age and maturity of the child; and
(6) whether either parent is motivated by concerns other than the child's best interest-for example, an attempt to alienate the child from the other parent.
Anderson , 478 S.W.3d at 151.
Because changing a child's last name may cause disruption and confusion, courts have recognized the benefits inherent in maintaining the status quo and the need for a petitioner to demonstrate that a different last name is in the child's best interest. See Anderson , 478 S.W.3d at 152-53 (noting that both parents provided best-interest evidence in support of their preferred disposition and concluding that, on mixed evidence, trial court did not abuse discretion in ordering name change);
*755 In re A.E.M. , 455 S.W.3d 684, 692 (Tex. App.-Houston [1st Dist.] 2014, no pet.) (holding that "slight evidence" presented by father did not meet burden for changing child's last name); In re Guthrie , 45 S.W.3d 719, 724 (Tex. App.-Dallas 2001, pet. denied) (stating that courts will change child's name reluctantly and only for good reason); cf. In re H.S.B. , 401 S.W.3d at 83 n.7 (noting that analysis in suits to change minor's name generally favors status quo).
B. Standard of review
We review a trial court's ruling on a request to change the name of a child for an abuse of discretion. In re A.E.M. , 455 S.W.3d at 689. A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. Id. When reviewing the sufficiency of the evidence under an abuse-of-discretion standard, evidentiary sufficiency is not an independent issue. Id. It is incorporated into the abuse-of-discretion review. Id. The analysis is two pronged: (1) whether the trial court had sufficient information to exercise its discretion[1] and (2) whether the trial court erred in its application of its discretion. Id.
The factfinder is the sole judge of a witness's credibility and the weight to be given each witness's testimony. City of Keller v. Wilson , 168 S.W.3d 802, 819 (Tex. 2005) ; Anderson , 478 S.W.3d at 152.
C. Trial court determines credibility and weight of witness testimony
To change a child's last name, the trial court must determine that the change is in the child's best interest. TEX. FAM. CODE § 45.004(a)(1). Werthwein and Workman were the only two witnesses at the hearing on Workman's petition to change Michael's last name to match his own. Both Werthwein and Workman testified on their views concerning Michael's best interest and provided specific examples and facts in support of their assertions. Their testimony often directly contradicted the other's. For example, Werthwein testified that Workman showed little interest in developing a bond with Michael until six months before the hearing and had never indicated that he disagreed with how Michael had been named before then. Workman, on the other hand, testified that Werthwein refused him access to Michael, and he reasoned that it was better not to litigate a name change at an earlier juncture because he needed to streamline the issues to obtain a court order allowing access to his son as soon as possible.
Another example of inconsistent testimony concerned why Workman denied paternity *756 pre-birth. Workman indicated that he denied paternity because a doctor had provided him information indicating he was unlikely to be able to have biological children and Werthwein later told him, while still pregnant, that he was not the father. Werthwein denied making such a statement and testified that she and Workman were actively trying to conceive a child, joyfully shared the news with friends when they realized she had become pregnant, and then, without warning, Workman denied he was the father and left.
The trial court noted the direct contradictions in the witnesses' testimony and its role to determine credibility. A trial court's credibility determination will influence the weight the trial court gives a witness's testimony. See In re A.E.M. , 455 S.W.3d at 691 (noting trial court's discretion to disbelieve mother's testimony). Thus, as we consider the evidence relevant to the factors for determining whether a name change was in Michael's best interest, we must be mindful of the trial court's role to determine witness credibility and the weight to be given each parent's testimony. See id.
D. Trial court did not abuse discretion by granting name change
Workman provided testimony directly relevant to many of the best-interest factors. He testified that changing Michael's last name to match his own would avoid anxiety and confusion for Michael in the future when the two participated in activities together because Michael would be recognizable as Workman's son. Workman provides child support for Michael.
He further testified that, from his perspective, it would not disrupt Michael's life to change his last name at such a young age. It was Workman's position that Michael identified by his first name only at this time in his life, with little emphasis on what his full name might be.
Workman also testified that Michael sharing his last name would facilitate their father-son bond and better enable Michael to identify with Workman's other relatives who also share his last name. See Anderson , 478 S.W.3d at 153 (holding that trial court did not abuse discretion in determining that child's last name should be changed to match father's name "to facilitate the formation of a father-daughter bond" in view of father's testimony about his "desire to form a father-daughter bond that the trial court found sincere"). Workman suggested that Michael would benefit from assistance in developing familial ties with Workman's side of the family because Werthwein had allowed only limited contact pre-divorce and, post-divorce, Michael spends much less time with his side of the family than with Werthwein and hers.
Workman stated that his name enjoyed a good reputation in the community and that he would not change his last name in the future. Finally, Workman testified that he believed both parents were motivated by their child's best interests.
Werthwein provided counter evidence. She testified that it would actually cause confusion for Michael to switch to Workman's last name because, the vast majority of the time, she is the one who takes Michael to events and faces the prospects of having a mismatch of last names. Further, she provided video evidence of Michael stating his full name to counter Workman's assertion that he knows only his first name.
Werthwein also noted that she was in the position of naming Michael at a time when his father was refusing any contact and denying paternity. Werthwein noted that Workman had waited to initiate a name change until Michael had already learned his name and accumulated school and medical records reflecting a certain identity, which she asserted would increase *757 the likelihood that confusion would result from a name change.
Werthwein agreed that "not many" of the kids have a last name different from their fathers but offered that "they've not experienced" what occurred leading up to Michael's birth and naming.
Like Workman, Werthwein testified that her last name is reputable and directly connected to her professional presence in the community, as well as her established history of community service. Moreover, Werthwein has a large extended family that Michael is close to that shares the last name Werthwein. Werthwein confirmed that she would not change her last name in the future.
Courts do not mechanically apply multifactor tests to determine which parent provided evidence in support of the most factors; instead, courts rely on the factors to guide the analysis on the overarching question of which name is in the child's best interest. See In re J.N.L. , 528 S.W.3d 237, 241 (Tex. App.-Houston [14th Dist.] 2017, no pet.) (stating that "primary concern in determining whether to change a child's name is the child's best interest"); In re T.W. , No. 13-14-00318-CV, 2014 WL 6792467, at *6 (Tex. App.-Corpus Christi Dec. 3, 2014, no pet.) (mem. op.) (stating that "determining the best interests of the child does not require proof of any unique set of factors or limit proof to any specific set of factors"). Courts are not required to give equal weight to each factor. In re J.N.L. , 528 S.W.3d at 241 ; cf. In re A.E.M. , 455 S.W.3d at 693 (Bland, J., dissenting) ("As with any evaluation of evidence, the number of factors ... should not control the analysis; rather, the logical force of the facts and inferences from them should."). The significance of each factor depends on the facts, leaving the possibility that some factors may be irrelevant. In re J.N.L. , 528 S.W.3d at 241.
Both parents supplied evidence in support of Michael having their last name. And both provided testimony relevant to several of the best-interest factors. For example, both parents testified that their own last name would not embarrass Michael, cause him anxiety, or otherwise harm him. Both testified in support of Michael having their own last name to facilitate bonding with the parent and the parent's family. Finally, both contended that their own last name was in his best interest.[2]
*758 The trial court as factfinder had the sole authority to make credibility determinations and resolve conflicts in the evidence. See Anderson , 478 S.W.3d at 152. Facing this mixed evidence, with both parents supplying evidence to satisfy best-interest factors, including the facilitation of bonding between parent and child, the trial court did not abuse its discretion in selecting the father's last name to further bonding between the father and the child. See ids="6828359" index="24" url="https://cite.case.law/sw3d/478/147/#p151">id. at 153. We conclude that there was legally and factually sufficient evidence to allow the trial court to resolve the name dispute in Workman's favor and that the trial court did not abuse its discretion in doing so, particularly given the directly contradictory testimony of the parents and the need for the trial court to make credibility determinations with respect to each parent's testimony. See Anderson , 478 S.W.3d at 152.
E. Werthwein's argument for heightened standard is unavailing
Werthwein contends that, even if there is evidence indicating that the name change is in Michael's best interest, case law imposes a higher burden on a petitioner to obtain a name change-proof that "the original name is detrimental to the child"-and that Workman failed to meet this higher burden. She relies on an opinion from the Fourteenth Court of Appeals, In re H.S.B. 401 S.W.3d 77. The court there stated, "In Texas, courts have held that a child's name should not be changed unless the party seeking the change shows that the original name is detrimental to the child," and further stated that the "power to change the name of a minor child is exercised reluctantly and only when necessitated by the substantial welfare of the child." Id. at 83. These two statements in H.S.B. are directly followed by the mandate that the "child's best interest is the primary concern-not the interests of the parents." Id.
After the H.S.B. opinion, the Fourteenth Court of Appeals rejected an argument (similar to Werthwein's) that a "baseline rule" exists that a child's name "should not be changed unless the original name is detrimental to the child." In re J.N.L. , 528 S.W.3d at 241. The court clarified that " section 45.004(a)(1) requires only that the name change be in the best interest of the child," and that no higher burden is imposed on the petitioning parent. Id. The J.N.L. holding is consistent with our case law.
In A.E.M. , we reversed the trial court's order that changed a child's last name to match his father's. 455 S.W.3d at 686. We held that the petitioning father did not meet his burden because he provided "only some slight evidence" relevant to just one of the best-interest factors while all five of the other factors remained neutral. Id. at 692 ; see In re C.M.V. , 479 S.W.3d 352, 359 (Tex. App.-El Paso 2015, no pet.) (concluding evidence was legally insufficient to support name change because father offered no evidence that change was in child's best interest).
Later, in Anderson , we distinguished A.E.M. and affirmed a name change. 478 S.W.3d at 152-53. There, we noted significant evidence from both parents supported each parent's preferred disposition. See ids="6828359" index="35" url="https://cite.case.law/sw3d/478/147/#p151">id. Both parents provided reasoned arguments that their last name would cause less confusion and would be in the child's best interest. See ids="6828359" index="36" url="https://cite.case.law/sw3d/478/147/#p151">id. But there was some contradictory testimony that required the trial court to resolve credibility and testimonial weight issues. See ids="6828359" index="37" url="https://cite.case.law/sw3d/478/147/#p151">id. In light of the mixed evidence, and with due deference to the trial court's credibility determinations, we concluded that adequate evidence supported the trial court's ruling and that it did not abuse its discretion. Id. at 153 ; see In re Guthrie , 45 S.W.3d at 726-27 (concluding that, on mixed evidence, trial court *759 did not abuse discretion by ruling that child's name be changed to father's).
Contrary to Werthwein's assertion, there is no requirement that an existing last name be proven detrimental to a child to obtain an order changing the child's name. See In re J.N.L. , 528 S.W.3d at 241. Instead of heightening the standard for obtaining a name change, these statements simply acknowledge that the party seeking the change must demonstrate that the requested change is in the child's best interest.
When a parent presents sufficient evidence that a different last name is in the child's best interest, even if there is counter evidence that supports the existing last name, a trial court does not abuse its discretion in ordering the name changed. See, e.g. , Anderson , 478 S.W.3d at 152-53 ; In re S.M.-R. , No. 02-15-00287-CV, 2016 WL 6900902, at *3 (Tex. App.-Fort Worth Nov. 23, 2016, no pet.) (mem. op.) ("Although the evidence that the trial court received conflicted on this issue, because there is some evidence of substantive and probative character showing that ... the name change was in [the child's] best interest, we hold that the trial court did not abuse its discretion by granting the name change.").
Having concluded that adequate evidence supports the name change and that the trial court, as a result, did not abuse its discretion in ordering the name change, we overrule Werthwein's first issue.
Burden of Proof
In her second issue, Werthwein contends that the trial court improperly shifted the burden of proof to her to disprove the propriety of changing Michael's last name. We see no indication from the exchanges between the trial court and Werthwein that the trial court based its decision exclusively on tradition[3] or that it removed the burden of proof from Workman and shifted it to Werthwein on the issue of best interest. Shortly after the trial began, the judge stated, "I'm looking in the statute. I [have] to find best interest and interest of the public to grant it."
The case law is clear that the party seeking to change a minor's name has the burden of proof. See In re A.E.M. , 455 S.W.3d at 690, 692. Counsel for the parties discussed that case law and other precedent during the name-change hearing, with the trial court announcing that it would review the precedent again before ruling. Subsequently, the trial court issued findings of fact and conclusions of law stating that it weighed all evidence and concluded that it was in Michael's best interest to have his last name changed to Workman.
Because there is no indication that the trial court impermissibly placed the burden of proof on Werthwein, we overrule her second issue.
Judicial Bias
Additionally, Werthwein argues that the trial court demonstrated a bias toward paternal last names, revealed through various comments to Werthwein as she testified, and that the bias "obviously influenced, if not outright controlled the trial court's decision." In other words, she contends that the trial court revealed a bias towards traditional naming choices and allowed that bias to dictate its ruling.
We agree that tradition is not a separate factor or an overriding factor to *760 be relied upon in evaluating a petition to change a minor's last name. In re S.M.-R. , 2016 WL 6900902, at *3 n.6. A parent does not present sufficient evidence to obtain a name change of a minor by relying solely on tradition. In re H.S.B. , 401 S.W.3d at 86 ("Tradition, standing alone, cannot justify changing a child's name."). But evidence on whether a child's last name follows the community's naming conventions may be relevant in some cases on whether a proposed last name for the child might insert some level of confusion in the child's life, which is an area of inquiry under the best-interest factors. Id. at 83 & n.7, 84 ; cf. In re S.M.-R. , 2016 WL 6900902, at *3 & n.6.
The record does not support the conclusion that the trial court allowed consideration of tradition to dominate the best-interest evaluation. The trial court's final order and findings of fact and conclusions of law acknowledge that the parties were married when Michael was born, but also state that the trial court "weighed all the evidence presented by the parties," "determined that the greater weight and preponderance of the evidence supported the name change," and concluded that it was in Michael's best interest. As a result, we do not find reversible error in the trial court's consideration of the implications that tradition might have on Michael's best interest.
Conclusion
We must defer to the trial court's conclusions regarding the credibility of witnesses and their testimony. See Williams v. Chisolm , 111 S.W.3d 811, 815 (Tex. App.-Houston [1st Dist.] 2003, no pet.) ; In re A.E.M. , 455 S.W.3d at 689. With due deference in that regard, we conclude that there was sufficient evidence to support the trial court's best interest determination in that there was adequate evidence to allow reasonable and fair-minded people to differ in their conclusions regarding the last name that was in Michael's best interest and to conclude that the last name Workman was in his best interest.[4]
Because the logical force of the testimony presented supports the trial court's decision, we uphold the trial court's ruling and affirm.

When reviewing for legal sufficiency, we consider the evidence in the light most favorable to the trial court's finding and indulge every reasonable inference that supports the challenged finding. City of Keller v. Wilson , 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. Id. at 827. When a party challenges the legal sufficiency of the evidence on an issue for which that party did not carry the burden of proof-as has occurred here-the party will prevail if (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. Id. at 810. If all of the evidence supporting a finding enables reasonable and fair-minded people to differ in their conclusions, more than a scintilla of evidence exists. In re A.E.M. , 455 S.W.3d 684, 689 (Tex. App.-Houston [1st Dist.] 2014, no pet.).
In reviewing the factual sufficiency of the evidence, we consider all of the evidence and set aside the judgment only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and manifestly unjust. Cain v. Bain , 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

Our colleague concludes in his dissent that the only evidence Workman presented that a name change was in Michael's best interest was speculative opinion testimony.
A name-change for a child is decided under a best-interest test that considers nonexclusive factors, including the name that would best avoid anxiety and confusion for the child and that would best help the child associate within a family unit. Anderson , 478 S.W.3d at 151. Often, the evidence on these matters is limited to the testimony of the two parents, each of whom is arguing for their own last name to be chosen, at the trial court's discretion, after it has weighed their testimony and credibility.
The situation is similar in other family law contexts that apply a best-interest test. Child custody issues are often resolved on the testimony of the two opposing parents. Cf. Womble v. Womble , 502 S.W.2d 886, 888 (Tex. Civ. App.-Fort Worth 1973, no writ) (on appeal of custody decision reached by trial court following trial that involved testimony of two parents and no other relevant evidence, holding that "the evidence the parties saw fit to offer during trial does not show that the trial court abused its discretion in awarding the custody of the three children as it did").
Parents are in a unique position to offer evidence of their children's best interest. And when children are very young, it is unclear what non-opinion evidence parents could be expected to present on factors such as the name that would best avoid anxiety and confusion for the child in the future. The law should not treat parent opinion testimony in that context as speculative.

A parent does not present sufficient evidence to change a child's last name by relying solely on traditional naming tendencies. In re H.S.B. , 401 S.W.3d 77, 86 (Tex. App.-Houston [14th Dist.] 2011, no pet.) ("Tradition, standing alone, cannot justify changing a child's name.").

We note that, in some instances, courts have ruled that the best interest of a child subject to a petition for name change is to form a new last name that combines both parents' last names through hyphenation. See In re S.M.-R. , No. 02-15-00287-CV, 2016 WL 6900902, at *3 (Tex. App.-Fort Worth Nov. 23, 2016, no pet.) (mem. op.); In re R.E.G. , No. 13-08-00335-CV, 2009 WL 3778014, at *5 (Tex. App.-Corpus Christi 2009, pet. denied) (mem. op.).