**Opinion issued October 6, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00081-CV

————————————

**JULIE ANN ANDERSON, Appellant**

**V.**

**ANTHONY DOUGLAS DAINARD, Appellee**

---

**On Appeal from the 308th District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-29667**

---

## O P I N I O N

The trial court granted Anthony Dainard's request to change the surname of his daughter, A.A.A., from her mother's surname, Anderson, to his own. The mother, Julie Ann Anderson, argues in a single issue on appeal that the trial court

abused its discretion because insufficient evidence supports the trial court's judgment granting the name change. We affirm.

## Background

Anderson and Dainard had a brief romantic relationship but never married. After their relationship ended, Anderson told Dainard that she was pregnant with his child. Dainard questioned whether Anderson was pregnant and asked Anderson to consent to a test to establish his paternity, but Anderson did not consent.

In April 2012, Anderson gave birth to A.A.A. and gave her the surname "Anderson." Some months later, the Office of the Attorney General of Texas filed a parentage and child support action against Dainard. The trial court ordered parentage testing, and Dainard was established as A.A.A.'s biological father.

When A.A.A. was 6 months old, Anderson and Dainard agreed to temporary orders that established Dainard's parentage and named Dainard and Anderson joint managing conservators of A.A.A., with Anderson having the right to maintain A.A.A.'s primary residence in Harris or any contiguous county. The agreed temporary orders required Dainard to pay guidelines child support and provide health insurance. They also gave Dainard limited visitation of A.A.A.

After entry of the temporary orders, Dainard retained counsel and filed a Suit Affecting the Parent-Child Relationship, by which he sought to change

2

A.A.A.'s surname to Dainard. This suit was consolidated with the original action, and trial was delayed somewhat due, in part, to Anderson's desire to refer the case to a district court. The parties attended an unsuccessful mediation in June 2013, but their second mediation in June 2014 was more fruitful: Anderson and Dainard entered into a Mediated Settlement Agreement that resolved all issues except for the dispute over A.A.A.'s surname.

The parties proceeded to a trial on that issue in July 2014. On the day of trial, the parties proved up the Mediated Settlement Agreement, which established Anderson and Dainard as joint managing conservators and required Dainard to continue to pay child support and maintain health insurance for A.A.A. The MSA also provided for a "step-up" visitation plan that would, over time, become a standard possession order. Both Anderson and Dainard testified that they believed that these agreements were in A.A.A.'s best interest.

After approving the MSA, the trial court heard testimony from both Anderson and Dainard regarding the name change. Dainard testified that he saw A.A.A. regularly and believed it was in A.A.A.'s best interest to have his surname, because A.A.A. lived primarily with Anderson, and giving A.A.A. the Dainard surname would help create a bond between A.A.A. and Dainard. Dainard conceded on cross-examination, however, that he would "love [A.A.A.] all the same whatever her name is" and that he could bond with her regardless of her

3

name. He also acknowledged that neither surname would cause her any embarrassment.

Anderson testified that A.A.A spent approximately 90% of her time with Anderson during the first 26 months of her life. She testified that A.A.A. is aware of her last name, can speak her full name, and has always used the surname Anderson at her doctor's office and daycare. Anderson also testified that A.A.A. is close to Anderson's mother, who also uses the surname Anderson. Anderson testified that she would not change her own surname even if she married, and that she believed it was in A.A.A.'s best interest to keep her surname. Anderson testified that keeping A.A.A.'s surname would be less confusing and could give A.A.A. some confidence, but she acknowledged that A.A.A. knows that Dainard is her father and that changing A.A.A.'s name to Dainard would not change A.A.A.'s relationship with Anderson.

The trial court granted the name change, and its final judgment ordered that A.A.A. should have her surname legally and officially changed to Dainard for all purposes. Anderson timely appealed.

## Discussion

In her sole issue on appeal, Anderson contends that the trial court abused its discretion by ordering A.A.A.'s surname changed because the evidence is legally

4

and factually insufficient to show that the name change is in the child's best interest.

## A. Standard of Review

We review a trial court's ruling on a request to change the name of a child for an abuse of discretion. *In re A.E.M.*, 455 S.W.3d 684, 689 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *In re Guthrie,* 45 S.W.3d 719, 723 (Tex. App.—Dallas 2001, pet. denied). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles. *In re A.E.M.*, 455 S.W.3d at 689 (citing *In re H.S.B.*, 401 S.W.3d 77, 81 (Tex. App.—Houston [14th Dist.] 2011, no pet.)).

When reviewing the sufficiency of the evidence under an abuse-of-discretion standard, evidentiary insufficiency is not an independent issue. *In re A.E.M.*, 455 S.W.3d at 690; *Moreno v. Perez,* 363 S.W.3d 725, 735 (Tex. App.—Houston [1st Dist.] 2011, no pet). Instead, the sufficiency challenge is incorporated into the abuse-of-discretion review. *Moreno,* 363 S.W.3d at 735; *see In re H.S.B.,* 401 S.W.3d at 81–82. In this situation, "[o]ur analysis employs a two-pronged inquiry: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion." *Moreno*, 363 S.W.3d at 735 (citing *McGuire v. McGuire,* 4 S.W.3d 382, 387 (Tex. App.—Houston [1st Dist.] 1999, no pet.)).

5

Legally insufficient evidence supports a finding if (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller v. Wilson,* 168 S.W.3d 802, 810 (Tex. 2005). Where, as here, a trial court does not issue findings of fact and conclusions of law, all facts necessary to support the judgment and supported by the evidence are implied. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009).

**B.    Applicable Law**

Section 45.004 of the Texas Family Code provides, in pertinent part, that "[t]he court may order the name of a child changed if the change is in the best interest of the child . . . ." TEX. FAM. CODE ANN. § 45.004 (West 2014). And Section 160.636(e) of the Family Code, which governs orders adjudicating parentage, states that the court may order that the name of the child be changed "[o]n request of a party and for good cause shown."[1]

---

[1]    The good cause requirement in Section 160.636(e) is subsumed in the analysis of the best interest of the child, "[b]ecause the best interest of a child will necessarily be considered good cause for changing the child's name." *In re H.S.B.*, 401 S.W.3d 77, 81 n.2 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

The child's best interest is the determinative issue; the interests of the parents are irrelevant. *In re A.E.M.*, 455 S.W.3d at 690. We consider the best interest of the child in light of the following non-exclusive factors:

(1) the name that would best avoid anxiety, embarrassment, inconvenience, confusion, or disruption for the child, which may include consideration of parental misconduct and the degree of community respect (or disrespect) associated with the name;

(2) the name that would best help the child's associational identity within a family unit, which may include whether a change in name would positively or negatively affect the bond between the child and either parent or the parents' families;

(3) assurances by the parent whose surname the child will bear that the parent will not change his or her surname at a later time;

(4) the length of time the child has used one surname and the level of identity the child has with the surname;

(5) the child's preference, along with the age and maturity of the child; and

(6) whether either parent is motivated by concerns other than the child's best interest—for example, an attempt to alienate the child from the other parent.

*Id.* (quoting *In re H.S.B.*, 401 S.W.3d at 84). These are not the only factors that the trial court may consider, and the "relative importance of these factors, and other possible factors, will depend on the unique facts and circumstances of each case." *In re H.S.B.*, 401 S.W.3d at 84. As these factors suggest, the determination of the child's best interest in a name change is fact specific. *In re Guthrie*, 45 S.W.3d at 726.

7

## C.    Analysis

The uncontroverted testimony shows that neither parent's name would cause A.A.A. embarrassment, and there was no evidence that either name was accorded any particular respect in the community.  Nor was there evidence of parental misconduct or neglect.  Anderson testified that A.A.A. spent 90% of her time with Anderson, and Dainard testified that he had been providing support and health insurance and visiting A.A.A. regularly, in accordance with the temporary orders.  Anderson offered evidence from which the trial court could have inferred that Dainard did not prioritize A.A.A. as highly as Anderson did—she testified that Dainard had asked to reschedule visitation due to problems with his home, pet, job, or for "no excuse at all," and she also stated that Dainard did not get involved in A.A.A.'s life as early as he should have.  But the trial court could have discredited her testimony in light of conflicting evidence:  Dainard's testimony that Anderson refused to take a DNA test after she first told him she was pregnant and that he had been visiting A.A.A. regularly and complying with his obligation to support her since his parentage was established.  *See In re H.S.B.*, 401 S.W.3d at 87 (appellate court defers to the trial court's resolution of conflicts in testimony).

Anderson made passing mention that keeping the surname Anderson "seems less confusing."  She did not expound, but presumably meant that a name change could potentially confuse A.A.A., who knew her surname and could articulate her

8

full name, as well as her daycare, doctors, or others who identified her by the surname Anderson. But the trial court could have discounted this evidence because the best interest analysis focuses not on the impact that the name change will have on others but on the best interest of the child, who, in this instance, was only two years old at the time of trial and therefore had a relatively short amount of time to develop an association with her surname.[2] *See In re A.E.M.*, 455 S.W.3d at 690 (court should consider, among other things, child's age and ability to have a preference); *In re H.S.B.*, 401 S.W.3d at 84 (focus of inquiry is child's best interest, not interests of others).

Each of Dainard and Anderson asserted that they should be allowed to share a surname with A.A.A., to foster their respective familial bonds with her. Dainard testified that he believed A.A.A. should have his surname because she would live primarily with Anderson and see Dainard less frequently. And Anderson testified that allowing A.A.A. to keep the surname Anderson would foster a familial bond among A.A.A., Anderson and Anderson's mother. Anderson also testified that both she and her mother planned to keep their surname regardless of a future marriage. There was no evidence of any siblings or half-siblings with whom A.A.A. might share a surname.

---

[2] There was also conflicting evidence regarding whether Anderson sought to delay resolution of the name change suit.

9

The evidence before the trial court was thus mixed. On the one hand, there was evidence that keeping Anderson's name would avoid confusion and inconvenience for A.A.A. and others who knew her. Anderson also presented evidence that she and her mother would keep their surname and that sharing the surname Anderson would enable A.A.A. to form a familial bond with them. All of this evidence favored Anderson. On the other hand, the factors of age, maturity, and length of time the child had the surname Anderson favored Dainard. So did Dainard's assertion that sharing a surname with A.A.A. would help facilitate the development of a father-daughter bond, and that it was especially important that he have this connection with A.A.A. because she would be spending most of her time with Anderson. And there was conflicting evidence regarding the reasons that Dainard was not involved in his daughter's life from birth and the role Anderson played in Dainard's ongoing efforts to spend time with A.A.A.—conflicts that the trial court, as the sole judge of the credibility of the witnesses and the evidence, had the exclusive province to resolve. Thus, this case is unlike *In re A.E.M.*, in which the majority concluded that there was scant evidence regarding factors relevant to a name change and that the evidence only "slightly favor[ed]" a single factor. *See* 455 S.W.3d at 692 (concluding evidence insufficient to support name change where only evidence favoring name change was that child would carry on family name and share surname with half-sister with whom he did not live).

10

The decision the trial court was called upon to make was a difficult one to be sure. But it was not an abuse of discretion to determine that it was in A.A.A.'s best interest to change her surname in order to facilitate the formation of a father-daughter bond with Dainard, who was meeting his obligations to A.A.A. and expressed a desire to form a father-daughter bond that the trial court found sincere. *See In re M.C.F.*, 121 S.W.3d 891, 899 (Tex. App.—Fort Worth 2003, no pet.) (trial court does not abuse its discretion when it bases decisions on conflicting evidence); *In re Guthrie,* 45 S.W.3d at 726–27 (affirming trial court's grant of father's motion to change son's name when there were disputed factors supporting both mother's and father's surname); *cf. In re C.M.V.*, -- S.W.3d -- , No. 08-13-00146-CV, 2015 WL 2265388, at *5 (Tex. App.—El Paso May 13, 2015, no pet.) (abuse of discretion to grant father's name change request where father had no contact with child for 10 years and presented no evidence of 16-year old child's preference or from which it could be inferred that name change was in child's best interest).

We overrule Anderson's sole issue.

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.