

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00287-CV

---

IN THE INTEREST OF S.M.-R., A
CHILD

----------

FROM THE 231ST DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 231-556936-14

----------

### MEMORANDUM OPINION[1]

----------

Pro se appellant D.M. (Mother) appeals from the trial court's "Final Order Establishing the Parent-Child Relationship" between her daughter S.M.-R. (Stacy) and appellee J.R. (Father).[2] In three points, Mother contends that the trial court erred by granting Father's request to change Stacy's name to include his surname, by limiting Father's payment of retroactive child support, and by

---

[1]*See* Tex. R. App. P. 47.4.

[2]To protect the child's anonymity, we use an alias. *See* Tex. R. App. P. 9.8, 9.9(a)(3); *In re S.B.S.*, 282 S.W.3d 711, 712 n.1 (Tex. App.—Amarillo 2009, pet. denied).

ordering her to pay "attorney's fees" (or not requiring Father to pay attorney's fees). We affirm.

**Background Facts**

In May 2014, the State, represented by the Office of the Attorney General, filed a petition to establish the parent-child relationship between Stacy and Father.[3] The State asked the trial court to adjudicate Father's parentage of Stacy, to appoint "appropriate conservators" of Stacy, and to order Father to pay current and retroactive child support. The State also asked the trial court to order Father to pay the costs of the suit. Stacy had lived with Mother since birth, and Father had not previously paid child support.

At first, Father answered with a general denial. He later filed a counterpetition in which he conceded that he is Stacy's father and asked the trial court to appoint him as a managing conservator with the right to designate her primary residence.

In October 2014, the trial court signed a temporary order. The court found that Father is Stacy's father, appointed Mother and Father as her joint managing conservators, gave Mother the exclusive right to designate her primary residence, gave each parent periods of possession, and ordered Father to pay $202 per month in child support beginning on November 1, 2014.

---

[3]Mother gave birth to Stacy in May 2011, so Stacy was approximately three years old when the State filed its petition.

2

In November 2014, appearing pro se, Mother filed a motion for the trial court to modify the temporary order. Among other requests, she asked to be named Stacy's sole managing conservator. The record does not contain any ruling on Mother's modification motion.

In August 2015, the trial court held an evidentiary hearing. Following that hearing, the court signed a Final Order Establishing the Parent-Child Relationship. In the order, the trial court changed Stacy's surname so that it contained a hyphenated combination of Mother's and Father's surnames. The court appointed Mother and Father as Stacy's joint managing conservators and gave Mother the right to designate her primary residence. The court ordered Father to pay $351 per month[4] in current child support beginning on September 1, 2015 and to pay $4,570 in retroactive child support (at a rate of $70 per month) for the period of January 1, 2013 to November 1, 2014 (the date that Father began paying child support under the temporary order).[5] The court ordered Mother and Father to each pay half of the court costs associated with the

---

[4]The trial court found that Father's net monthly resources equaled $1,755 and required him to pay 20% of those resources—$351—as child support.

[5]The order does not set forth reasons why the trial court chose January 1, 2013 as the starting date for retroactive child support or how the trial court arrived at the figure of $4,570. But the record of the final hearing reflects that the trial court arrived at the $4,570 sum by adding fifteen months at $214 dollars per month (a total of $3,210) to four months at $340 per month (a total of $1,360). The State explained that the $214 figure equaled minimum wage and was applied to months in which Father was unemployed while the $340 figure applied to months in which he was employed.

3

suit, but the court did not explicitly require either party to pay attorney's fees. Mother brought this appeal.

## Name Change

In her first point, Mother contends that the trial court erred by changing Stacy's surname to include a hyphenated combination of Mother's and Father's surnames rather than Mother's surname only. We review a trial court's ruling on a parent's request to change the name of a child for an abuse of discretion. *Anderson v. Dainard*, 478 S.W.3d 147, 150 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *In re Guthrie*, 45 S.W.3d 719, 723 (Tex. App.—Dallas 2001, pet. denied). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or if it acts without reference to any guiding rules or principles. *Anderson*, 478 S.W.3d at 150. Our analysis on whether the trial court abused its discretion employs a two-pronged inquiry: "(1) whether the trial court had sufficient information upon which to exercise its discretion[,] and (2) whether the trial court erred in its application of discretion." *Id.* Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Found. Assessment, Inc. v. O'Connor*, 426 S.W.3d 827, 831 (Tex. App.—Fort Worth 2014, pet. denied). An abuse of discretion does not occur when some evidence of substantive and probative character supports the trial court's decision. *H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 520 (Tex. App.—Fort Worth 2012, no pet.).

4

The family code states that in an order adjudicating parentage, on "request of a party and for good cause shown, the court may order that the name of the child be changed." Tex. Fam. Code Ann. § 160.636(e) (West Supp. 2016). Another part of the family code states that a trial court may change the name of a child if the change is in the child's best interest. *Id.* § 45.004(a)(1) (West 2014); *see also id.* § 153.002 (West 2014) ("The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child.").

The good cause requirement of section 160.636(e) tacitly includes the best-interest-of-the-child requirement of section 45.004(a)(1); indeed, "the best interest of a child will . . . be considered good cause for changing the child's name." *Anderson*, 478 S.W.3d at 151 n.1 (quoting *In re H.S.B.*, 401 S.W.3d 77, 81 n.2 (Tex. App.—Houston [14th Dist.] 2011, no pet.)); *In re M.C.F.*, 121 S.W.3d 891, 895 (Tex. App.—Fort Worth 2003, no pet.) ("[W]hen reviewing the decision of a trial court to determine whether good cause was shown for changing a child's name in a proceeding to establish paternity under chapter 160, we conclude that the trial court must then also consider whether the change is in the best interest of the child."). "The child's best interest is the determinative issue; the interests of the parents are irrelevant." *Anderson*, 478 S.W.3d at 151; *see H.S.B.*, 401 S.W.3d at 83. Our sister courts have used the following non-exclusive factors to discern the best interest of a child in comparing the child's original name to a proposed name:

5

(1) the name that would best avoid anxiety, embarrassment, inconvenience, confusion, or disruption for the child, which may include consideration of parental misconduct and the degree of community respect (or disrespect) associated with the name;

(2) the name that would best help the child's associational identity within a family unit, which may include whether a change in name would positively or negatively affect the bond between the child and either parent or the parents' families;

(3) assurances by the parent whose surname the child will bear that the parent will not change his or her surname at a later time;

(4) the length of time the child has used one surname and the level of identity the child has with the surname;

(5) the child's preference, along with the age and maturity of the child; and

(6) whether either parent is motivated by concerns other than the child's best interest—for example, an attempt to alienate the child from the other parent.

*Anderson*, 478 S.W.3d at 151 (citing *In re A.E.M.*, 455 S.W.3d 684, 690 (Tex. App.—Houston [1st Dist.] 2014, no pet.)); *see H.S.B.*, 401 S.W.3d at 84; *see also In re T.G.-S.L.*, No. 02-12-00391-CV, 2013 WL 43738, at *3 (Tex. App.—Fort Worth Jan. 4, 2013, no pet.) (mem. op.) (reciting some the factors stated in *Anderson*).

Father testified that he wanted Stacy's name changed because he "believe[d]" that doing so was important. Later, he testified that he wanted Mother's surname to be stricken from Stacy's surname even though Stacy had lived the first four years of her life with Mother. He explained, "I'm still the father, and the father's last name -- in the way I was brought up -- should be the last

6

name of the child that is his." When asked whether any reason other than his tradition supported the change, Father said, "[I]f she's on my insurance, it makes it easier for me so I don't have to go and prove that this is my child . . . . [I]t makes it more easy flowing." Father also testified that incorporating both parents' last names could help Stacy facilitate a bond with them, although he acknowledged that it would not "bother [Stacy] if [his] name stayed off of her name."

When Mother was asked why she opposed a name change, she testified,

> [Stacy] is four-and-a-half. She already knows how to spell her name, write her name. She knows what her name is. The confusion we're having right now is when she goes over to [Father's] house, they call her [by his surname]. So she comes home saying, my last name is [Father's surname].
>
> It's more confusing on her than anything for her to try to figure out who she is, and so the objection for the name change is it's in the best interest of her to keep it how it is so it's not confusing.

Under this evidence and the remaining evidence in the record, we conclude that the trial court did not abuse its discretion by granting the name change. Although Father's testimony about the reason he was seeking a name change initially focused on his own interests in preserving tradition,[6] he later emphasized goals that served Stacy's best interests, including avoiding

---

[6]Tradition alone is an insufficient reason to change a child's name. *H.S.B.*, 401 S.W.3d at 86 ("Chalifoux's testimony about tradition was no evidence of best interest. Tradition, standing alone, cannot justify changing a child's name."); *In re R.E.G.*, No. 13-08-00335-CV, 2009 WL 3778014, at *3 (Tex. App.—Corpus Christi Nov. 12, 2009, pet. denied) (mem. op.) ("[N]either custom and tradition, nor a parent's interest and desire, override the best interest of the child.").

obstacles in securing her insurance and helping her bond with both parents. *Cf. Anderson*, 478 S.W.3d at 153 ("[I]t was not an abuse of discretion to determine that it was in A.A.A.'s best interest to change her surname in order to facilitate the formation of a father-daughter bond . . . ."). Furthermore, the trial court could have reasonably found that the confusion about Stacy's identity that Mother described could be alleviated by her bearing a surname containing both Mother's and Father's surnames and therefore associating her identity with both of them. *Cf. R.E.G.*, 2009 WL 3778014, at \*5 ("The court's ordered name change of "Garcia-Padilla" allows the child to identify equally with two family units that are deeply concerned about his best interests."). Finally, the trial court could have reasonably found that incorporating Father's surname into Stacy's surname could encourage his participation in her upbringing, which had been limited in the first few years of her life.

Although the evidence that the trial court received conflicted on this issue, because there is some evidence of substantive and probative character showing that there was good cause for the name change and that the name change was in Stacy's best interest, we hold that the trial court did not abuse its discretion by granting the name change. *See* Tex. Fam. Code Ann. §§ 45.004(a)(1), 160.636(e); *H.S.B.,* 401 S.W.3d at 88; *Ardinger*, 369 S.W.3d at 520; *see also Guthrie*, 45 S.W.3d at 726–27 (affirming a trial court's name change of a child when there were disputed factors supporting both the mother's and father's surnames). We overrule Mother's first point.

8

## Retroactive Child Support

In her second point, Mother argues that the trial court erred by ordering Father's retroactive child support obligation to begin on January 1, 2013 rather than requiring the obligation to run from an earlier date. Mother contends that the trial court should have been a "mere scrivener" when assessing the retroactive child support obligation.[7] She asserts, "The Texas Family Code has eliminated discretionary judgment from child support proceedings."

"A trial court's order setting or modifying child support will not be disturbed on appeal unless the complaining party can demonstrate a clear abuse of discretion. The court also enjoys broad discretion in determining the amount of retroactive child support, if any, to be ordered . . . ." *In re J.M.W.*, 470 S.W.3d 544, 549 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citations omitted); *see also Rocha v. Villarreal*, 766 S.W.2d 895, 899 (Tex. App.—San Antonio 1989, no writ) ("[I]t is imperative that the trial judge have broad discretion to decide whether all of the facts and circumstances necessitate and justify a retroactive award of support.").

---

[7]When determining a child support arrearage, a trial court acts as a "mere scrivener," but an arrearage—unpaid support previously ordered—is distinct from retroactive child support. *See Lewis v. Lewis*, 853 S.W.2d 850, 854 (Tex. App.—Houston [14th Dist.] 1993, no writ); *see also In re K.M.J.*, No. 02-09-00303-CV, 2011 WL 3525439, at *1 (Tex. App.—Fort Worth July 28, 2011, no pet.) (mem. op.) ("[T]he trial court, acting as a mere scrivener, mechanically tallies the arrearage amount.").

On a finding of parentage, a trial court may order retroactive child support "as provided by [c]hapter 154" of the family code.  Tex. Fam. Code Ann. § 160.636(g).  In ordering the retroactive child support, the court "shall use" the guidelines included in chapter 154.  *Id.* § 160.636(h).  Section 154.131, entitled "Retroactive Child Support," includes the following provisions:

(a) The child support guidelines are intended to guide the court in determining the amount of retroactive child support, if any, to be ordered.

(b) In ordering retroactive child support, the court shall consider the net resources of the obligor during the relevant time period and whether:

(1) the mother of the child had made any previous attempts to notify the obligor of his paternity or probable paternity;

(2) the obligor had knowledge of his paternity or probable paternity;

(3) the order of retroactive child support will impose an undue financial hardship on the obligor or the obligor's family; and

(4) the obligor has provided actual support or other necessaries before the filing of the action.

(c) It is presumed that a court order limiting the amount of retroactive child support to an amount that does not exceed the total amount of support that would have been due for the four years preceding the date the petition seeking support was filed is reasonable and in the best interest of the child.

(d) The presumption created under this section may be rebutted by evidence that the obligor:

(1) knew or should have known that the obligor was the father of the child for whom support is sought; and

(2) sought to avoid the establishment of a support obligation to the child.

(e) An order under this section limiting the amount of retroactive support does not constitute a variance from the guidelines requiring the court to make specific findings under Section 154.130.

*Id.* § 154.131(a)–(e) (West 2014).

The State argues that the presumption created by subsection (c) applies here because the trial court's award of retroactive child support does not exceed the total amount of support that would have been due for four years before the State filed its parentage petition. *Id.* § 154.131(c). In her brief, Mother does not discuss the presumption (or cite section 154.131 at all) or argue that the evidence presented in the trial court rebuts the presumption. Father contends that the trial court did not abuse its discretion by limiting the retroactive period for child support because the court could have considered his initial lack of certainty that Stacy was his child and Mother's delay in obtaining a DNA test that proved his parentage of Stacy. Mother similarly does not address these assertions that appear to have motivated the trial court's decision.[8]

---

[8]In the process of announcing its decision on retroactive child support, the trial court stated,

I find that, Dad, you should have done something about it sooner.

Mom, you should have made it happen, as well.

. . . .

11

Instead, Mother's principal discernable argument on this point is that the trial court had no discretion in the amount of retroactive child support ordered. This contention is incorrect.[9] *See J.M.W.*, 470 S.W.3d at 549; *see also In re J.H.*, 264 S.W.3d 919, 925 (Tex. App.—Dallas 2008, no pet.) ("The statutory language vests the trial court with discretion to award retroactive support and the amount of that support."); *In re J.C.K.*, 143 S.W.3d 131, 141 (Tex. App.—Waco 2004, no pet.) ("Section 154.131 vests a trial court with discretion to determine whether to award retroactive child support and the amount of that support."). And Father's argument—that the trial court could have used evidence concerning his lack of certainty of his parentage and Mother's delay in establishing his parentage as factors in setting the amount—is correct. *See* Tex. Fam. Code Ann. § 154.131(b)(1)–(2). Because Mother does not analyze the evidence under those factors or challenge the trial court's exercise of discretion under them, and

[Y]ou also had a duty to try and do something about it, and you didn't do anything about it.

So what I'm trying to do here, guys, I'm just trying to get y'all in the middle, and that's where the child support's coming from.

[9]Mother also contends that there is "no evidence to support *the subsumed finding* that [Father] was not working for 3 years since the time of [Stacy's] birth." [Emphasis added.] She appears to argue that the trial court's decision to make the child support retroactive only to January 1, 2013 indicates such an implicit finding. As explained above, however, the trial court appeared to base its decision on other considerations; we cannot agree with Mother that the trial court made any "subsumed finding" about Father's three-year work history. The trial court did base part of the award of retroactive support on a finding that Father had been unemployed for a period of fifteen months, and Father's testimony directly supports that finding.

because at least some evidence of probative character supports the trial court's decision, we overrule her second point. *See J.M.W.*, 470 S.W.3d at 549.

**Attorney's Fees**

The entirety of Mother's argument on her third point reads, "This case was filed by the Attorney General to determine paternity[;] therefore[,] [attorney's] fees incurred by the Appellant[10] should be paid by the Appellee." It is unclear from this statement whether Mother contends that the State or Father, each of which are appellees, should pay her "attorney's fees." Although she does not cite any authority in her argument of her third point, an earlier section of her brief, in which she first states the content of her points, includes a citation to *In re R.V.M.*, 530 S.W.2d 921, 923 (Tex. Civ. App.—Waco 1975, no writ). There, the court noted that a provision in the family code authorized the award of reasonable attorney's fees in child support cases, and the court upheld an award of attorney's fees against the father in a paternity suit. *Id.* Thus, we construe Mother's point as a contention that the trial court should have ordered Father to pay her attorney's fees.

Other than her "Motion to Modify Temporary Orders," the record does not contain any pleadings filed by Mother. In that motion, Mother did not request an award of attorney's fees. The trial court's judgment does not require any party to pay another party's attorney's fees.

---

[10]We note that appellant appeared pro se in the trial court, just as she does on appeal.

13

A trial court may award attorney's fees in a suit affecting the parent-child relationship. Tex. Fam. Code Ann. § 106.002(a) (West 2014). But because the record does not establish that Mother ever requested an award of attorney's fees, we cannot conclude that the trial court erred by not awarding them. *See* Tex. R. App. P. 33.1(a); *Klaver v. Klaver*, 764 S.W.2d 401, 405 (Tex. App.—Fort Worth 1989, no writ); *see also In re Naylor*, 160 S.W.3d 292, 295 (Tex. App.—Texarkana 2005, pet. denied). We overrule Mother's third point.[11]

## Conclusion

Having overruled Mother's three points, we affirm the trial court's judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and SUDDERTH, JJ.

DAUPHINOT, J., filed a dissenting and concurring opinion.

DELIVERED: November 23, 2016

---

[11]The State asserts in its brief that "Mother cannot be compelled to pay court costs under Texas Family Code section 231.211." *See* Tex. Fam. Code Ann. § 231.211 (West 2014). Mother's third point concerns attorney's fees, not costs.

14