**Opinion filed January 22, 2021**



**In The**

# Eleventh Court of Appeals

_____

## No. 11-19-00312-CV
_____

## IN THE INTEREST OF G.L.H., A CHILD

**On Appeal from the 42nd District Court**
**Coleman County, Texas**
**Trial Court Cause No. CV06755**

### O P I N I O N

In this suit affecting the parent-child relationship, the trial court ordered that the surname of Appellant Audrey Holmquest's son, G.L.H., was changed to the surname of his father, Appellee Buck Nelson. In one issue, Appellant argues that the trial court erred when it changed G.L.H.'s name because the evidence is legally and factually insufficient to establish (1) that there was good cause for the name change and (2) that the name change was in G.L.H.'s best interest. We affirm.

I. *Factual Background*

Appellant and Appellee's romantic relationship ended shortly after Appellant learned that she was pregnant. Appellee had no significant involvement with Appellant during the pregnancy. However, four months after G.L.H. was born,

Appellee filed a petition to adjudicate parentage and requested that the trial court (1) establish the parent-child relationship between Appellee and G.L.H.; (2) enter orders with regard to conservatorship, child support, and possession of G.L.H.; and (3) change G.L.H.'s surname to Appellee's surname. Appellant filed a counterpetition in which she requested (1) that she be named sole managing conservator of G.L.H.; (2) alternatively, that she and Appellee be appointed joint managing conservators and that she have the exclusive right to designate G.L.H.'s primary residence; (3) that the trial court render a possession order appropriate for the possession of a child less than three years of age; and (4) that Appellee be required to pay prospective and retroactive child support and medical support. The parties reached an agreement on all issues except the issue of Appellee's name change request.[1]

Appellant and Appellee were the only two witnesses at the hearing on the name change request. Appellee testified that his relationship with Appellant ended before G.L.H. was born. According to Appellee, his only hesitancy about the pregnancy was that, "in [his] mind, [he] needed a pile of money and a house." Appellee worked hard and obtained his own residence as well as some money. Although Appellant refused Appellee's offer of money, he brought her gifts and put a "significant amount" of money in the bag.

According to Appellee, he was not "fully allowed" to be involved with the pregnancy after his relationship with Appellant ended. Appellant also did not tell him when she went into labor. Appellant immediately went to the hospital when he learned that G.L.H. had been born. Over the next several months, Appellee attempted to have visitation with G.L.H. and "tried to offer help and time with him."

---

[1]We note that the "Rule 11 Agreement," which was signed by the parties and their attorneys and approved by the trial court, stated "Name Change to ~~Holmquest~~ Nelson" and required Appellee to "take all steps necessary to change legal documents, including birth certificate & SSN." However, the parties represented to the trial court that the issue of the name change had not been resolved.

However, his attempts to "work" with Appellant "seemed futile." Appellee filed the petition to adjudicate in order to establish his child support obligation and to obtain a possession schedule.

Although Appellee had helped raise his stepdaughters, G.L.H. was his only child, and Appellee wanted G.L.H. to have the same surname as Appellee. Appellee's family had "worked hard" to keep a "good" name, and Appellee was proud of his name. It was "extremely important in [Appellee's] raising from [his] father" that Appellee had his father's last name. Appellee was "raised with that," and he wanted G.L.H. to have Appellee's surname. In Appellee's opinion, a hyphenated last name was "kind of a mouth full" and would lead to complications when G.L.H. was older.

Appellant testified that G.L.H. was fourteen months old at the time of the final hearing. In Appellant's opinion, a name change would not benefit G.L.H., and it was not in G.L.H.'s best interest to have his name changed. However, Appellant had reluctantly agreed that G.L.H.'s surname could be changed to a hyphenated name.

According to Appellant, Appellee left her shortly after she told him that she was pregnant. Although Appellant attempted to include Appellee in doctor's appointments, the gender reveal, and a baby shower, there were long periods of time without any form of communication from Appellee. Appellant told Appellee that he could be listed as G.L.H.'s father on the birth certificate, but Appellee was not at the hospital to complete the paperwork.

Appellant testified that she had to "bring a whole lot of paperwork" whenever she took G.L.H. to "the doctor, dentist, anything" in order to prove that he was her child. Appellant believed that, if G.L.H.'s name was changed, she would "be carrying around birth certificates, social securities, extra IDs" to "anything that we do."

3

In Appellant's opinion, a parent needed to provide more than a name to a child. Specifically, it was important for a parent to give a child "values, virtues, life lessons." Appellant did not plan to have another child, and as part of her relationship with G.L.H., she wanted her name to "stay with him as a part of him." According to Appellant, it was "outdated" for a child to have the father's last name. Appellant, however, admitted that the situation would be different if she and Appellee were married or had been married.

The trial court granted the requested name change. The trial court stated that it was sympathetic to Appellant's position but that it expected "fathers to be fathers in every way, including the ways that [Appellant] said. And that's really hard to do when you're going around with a child that doesn't have your name." The trial court made findings of fact and conclusions of law (1) that Appellee filed the petition to adjudicate when G.L.H. was four months old; (2) that, in agreed temporary orders entered on January 10, 2019, Appellee had been adjudicated to be G.L.H.'s father and had been appointed as a joint managing conservator; (3) that Appellee had been granted visitation with G.L.H. and had been paying child support; (4) that G.L.H. was fourteen months old at the time of the final hearing; and (5) that taking into consideration G.L.H.'s young age, each parent's involvement in G.L.H.'s life, and G.L.H.'s current and future needs, "in accordance with §45.004 of the Texas Family Code," it was in G.L.H.'s best interest to change his surname to Appellee's surname.

## II. *Standard of Review*

We review the trial court's order on a request to change the name of a minor child for an abuse of discretion. *Anderson v. Dainard*, 478 S.W.3d 147, 150 (Tex. App.—Houston [1st Dist.] 2015, no pet.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or if it acts without reference to any guiding rules or principles. *Werthwein v. Workman*, 546 S.W.3d 749, 755 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

4

Under an abuse-of-discretion standard, legal and factual sufficiency of the evidence are not independent grounds of error. *Id.*; *In re S.M.V.*, 287 S.W.3d 435, 446 (Tex. App.—Dallas 2009, no pet.). Rather, "the sufficiency challenge is incorporated into the abuse-of-discretion review." *Anderson*, 478 S.W.3d at 150. To determine whether the trial court abused its discretion, we consider whether the trial court had sufficient evidence upon which to exercise its discretion and whether the trial court erred in its exercise of that discretion. *In re J.N.L.*, 528 S.W.3d 237, 240 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *In re C.M.V.*, 479 S.W.3d 352, 358 (Tex. App.—El Paso 2015, no pet.). We conduct the applicable sufficiency review when we consider the first prong of the test. *In re H.S.B.*, 401 S.W.3d 77, 82 (Tex. App.—Houston [14th Dist.] 2011, no pet). We then determine whether, based on that evidence, the trial court made a reasonable decision. *In re I.D.Z.*, 602 S.W.3d 1, 5 (Tex. App.—El Paso 2020, no pet.).

When we conduct a legal sufficiency review, we must determine whether the evidence would enable a reasonable and fair-minded person to reach the finding under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005); *In re S.M.V.*, 287 S.W.3d at 446. We consider the evidence in the light most favorable to the finding and indulge every reasonable inference that supports the challenged finding. *City of Keller*, 168 S.W.3d at 822; *In re J.N.L.*, 528 S.W.3d at 240. We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller*, 168 S.W.3d at 827; *In re J.N.L.*, 528 S.W.3d at 240. When we review whether the evidence is factually sufficient to support the trial court's decision, we consider all the evidence and set aside the judgment only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *In re J.N.L.*, 528 S.W.3d at 240.

The trial court does not abuse its discretion when it bases its decision on conflicting evidence or when there is some evidence of substantive and probative character that supports its decision. *In re S.M.V.*, 287 S.W.3d at 450; *In re M.C.F.*, 121 S.W.3d 891, 899 (Tex. App.—Fort Worth 2003, no pet.). When, as in this case, the trial court acts as the factfinder, it is the sole judge of a witness's credibility and the weight to be given to each witness's testimony. *City of Keller*, 168 S.W.3d at 819; *In re J.N.L.*, 528 S.W.3d at 240.

### III. *Analysis*

Appellant argues that the trial court abused its discretion when it changed G.L.H.'s surname because the evidence was legally and factually insufficient to establish (1) that there was good cause for the name change and (2) that the name change was in G.L.H.'s best interest. Section 45.004(a)(1) of the Texas Family Code provides that "[t]he court may order the name of a child changed if . . . the change is in the best interest of the child." TEX. FAM. CODE ANN. § 45.004(a)(1) (West 2014). Further, Section 160.636(e) of the Family Code, which governs an order in which the trial court adjudicates parentage, provides that, "[o]n request of a party and for good cause shown," the trial court may order that the name of the child be changed. *Id.* § 160.636(e) (West Supp. 2020).

The Fort Worth, Dallas, and El Paso Courts of Appeals have held that "good cause" and "best interest" are distinct concepts and that a parent who seeks to change a child's name pursuant to Section 160.636(e) must establish both. *In re C.M.V.*, 479 S.W.3d at 358–59; *In re S.M.V.*, 287 S.W.3d at 447; *In re M.C.F.*, 121 S.W.3d at 894–95.[2] The Houston First and Fourteenth Courts of Appeals, however, have

---

[2]*But cf. In re S.M.-R.*, No. 02-15-00287-CV, 2016 WL 6900902, at *2 (Tex. App.—Fort Worth Nov. 23, 2016, no pet.) (mem. op.) ("The good cause requirement of section 160.636(e) tacitly includes the best-interest-of-the-child requirement of section 45.004(a)(1); indeed, 'the best interest of a child will . . . be considered good cause for changing the child's name.'" (alteration in original) (quoting *Anderson*, 478 S.W.3d at 151 n.1)).

6

determined that the good cause requirement in Section 160.636(e) is subsumed in the best-interest analysis because the best interest of a child will "necessarily be considered [a] good cause for changing the child's name." *Anderson*, 478 S.W.3d at 151 n.1; *see also In re H.S.B.*, 401 S.W.3d at 81 n.2. Those courts, consequently, restricted their analysis to whether the name change would be in the best interest of the child. *Anderson*, 478 S.W.3d at 151–53; *In re H.S.B.*, 401 S.W.3d at 81 n.2.

In this case, Appellee filed a petition to adjudicate parentage in which he asserted that there was good cause to change the child's surname. Therefore, we construe Appellee's pleadings as a request to change the child's name pursuant to Section 160.636(e). The trial court, however, found that, under Section 45.004(a)(1), it was in G.L.H.'s best interest to have Appellee's surname but did not make a finding pursuant to Section 160.636(e) that there was good cause to change G.L.H.'s surname. Further, neither party requested a good cause finding. *See* TEX. R. CIV. P. 299 ("[W]hen one or more elements [of a ground of recovery or of a defense] have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment."). Therefore, based on this record, we will evaluate whether the trial court abused its discretion when it determined that the change in surname was in G.L.H.'s best interest and, if there is sufficient evidence to support such a finding, will presume that the trial court found good cause on the same basis. *See In re H.S.B.*, 401 S.W.3d at 81 n.2; *see also* TEX. R. CIV. P. 299.

When a party requests a name change for a child, the child's best interest is the determinative issue. *Anderson*, 478 S.W.3d at 151. The interests and desires of the parents are of secondary consideration. *In re D.A.*, 307 S.W.3d 556, 564 (Tex. App.—Dallas 2010, no pet.). We consider the trial court's decision as to the best interest of the child in light of several factors, including (1) how long the child has used his current surname and how the child identifies with that surname; (2) the age

7

and preferences of the child; (3) whether the proposed name change would adversely affect the bond between the child and his parents; (4) whether the proposed name change would help the child identify with his family or would adversely affect the bond between him and his family; (5) whether the party requested the name change in order to alienate the child from the other parent; (6) whether the proposed name change would avoid embarrassment, inconvenience, or confusion for the child or for the parent that requested the name change; (7) whether the proposed name change would increase or decrease the respect that the child received in the community where he lived; (8) whether the proposed name change would be easier or more convenient for the custodial parent; and (9) whether there was a delay in the request for the name change. *In re L.T.M.*, No. 11-15-00312-CV, 2016 WL 7650549, at *2 (Tex. App.—Eastland Dec. 30, 2016, no pet.) (mem. op.) (citing *In re H.S.B.*, 401 S.W.3d at 84; *Scoggins v. Treviño*, 200 S.W.3d 832, 837 (Tex. App.—Corpus Christi–Edinburg 2006, no pet.); *In re Guthrie*, 45 S.W.3d 719, 725–26 (Tex. App.—Dallas 2001, pet. denied)).

A court is not required to attribute equal weight to each factor in a given case. *In re J.N.L.*, 528 S.W.3d at 241. Rather, the significance of each factor depends on the specific facts of the case, and one or more factors may be irrelevant to a dispute. *Id.* Here, the trial court attributed particular weight to G.L.H.'s young age, each parent's involvement in G.L.H.'s life, and G.L.H.'s current and future needs.

A child's age, in and of itself, does not determine whether a name change is in the child's best interest. *Id.* at 244. Rather, the child's age must be considered in conjunction with the level of identity that the child has with the name. *Id.* G.L.H. was fourteen months old at the time of the final hearing and had used Appellant's surname since birth. However, because of his young age, there was no evidence that G.L.H. identified with his current surname or had any preference as to his surname. Further, Appellee filed the petition to adjudicate parentage, which included the

request that G.L.H.'s surname be changed, when G.L.H. was only four months old. Based on this evidence, the trial court could have reasonably found (1) that Appellee did not delay the request for the name change; (2) that Appellant's surname had not been used by G.L.H. for a lengthy period of time; and (3) that, based on G.L.H.'s young age, he had not grown accustomed to Appellant's surname and would not be confused by a name change.

As to each parent's involvement in G.L.H.'s life and G.L.H.'s current and future needs, Appellant testified that Appellee had minimal involvement with Appellant during the pregnancy and that she did not complete the paperwork at the hospital so that he could be named and identified as G.L.H.'s father on the child's birth certificate. Appellant believed that a change in G.L.H.'s name would make it more difficult for her to prove that he was her child when she took him to medical appointments and other activities. In Appellant's opinion, the idea that a child should have his father's name was outdated, and rather than provide a name to a child, a father should provide and emphasize morals, virtues, and life lessons. Further, Appellant did not believe that a change in name would benefit G.L.H. or be in G.L.H.'s best interest.

Appellee testified that he was not "fully allowed" to be involved in the pregnancy after his relationship with Appellant ended. He was hesitant to be involved because he believed that he needed to get a "pile of money" and his own residence. Appellee "worked hard," obtained a residence, saved some money, and gave Appellant gifts and a "significant" amount of money while she was pregnant. According to Appellee, Appellant did not tell him when she went into labor and did not cooperate with him in his attempts to be a parent to G.L.H. Appellee filed the petition to adjudicate parentage so that he could fulfill his obligation to support G.L.H. and obtain a possession schedule for visitation with G.L.H.

According to Appellee, his family had worked hard to maintain a good name, and he was proud of his family's surname. Appellee testified as to how important it had been to him to have the same surname as his father and that he wanted to share that experience with his child.

The trial court heard conflicting evidence of the reasons for Appellee's limited involvement in Appellant's pregnancy and absence at G.L.H.'s birth. It also heard evidence that Appellee had attempted to be involved in G.L.H.'s life after he was born and that Appellee believed that Appellant had not cooperated with him and had thwarted his efforts to be a meaningful parent. It was undisputed that, shortly after G.L.H.'s birth, Appellee took affirmative steps to secure an order to be adjudicated G.L.H.'s father, to establish his child support obligation, and to be allowed possession of G.L.H. The trial court, as the factfinder, was required to resolve the conflicts in the evidence, *Anderson*, 478 S.W.3d at 152–53, and we must defer to its conclusions regarding the witnesses' credibility, *Werthwein*, 546 S.W.3d at 760. Based on the evidence before it, the trial court could have reasonably determined that, because Appellee was not the parent with whom G.L.H. would be living the majority of the time, the name change would foster the bond between G.L.H. and Appellee and that strengthening this bond outweighed any alleged inconvenience to Appellant. *See Anderson*, 478 S.W.3d at 152–53 (holding that, where there were conflicts in the evidence, the trial court had discretion to determine that it was in the child's best interest to change her surname in order to facilitate the formation of a bond with her father). In light of the record before us, we conclude that the evidence was both legally and factually sufficient to support the trial court's finding that a change of surname was in G.L.H.'s best interest and that the trial court made a reasonable decision based upon the evidence presented. Accordingly, the trial court did not abuse its discretion when it ordered that G.L.H.'s surname be changed to Appellee's surname. We overrule Appellant's sole issue.

## IV. *This Court's Ruling*

We affirm the trial court's order.


W. STACY TROTTER

JUSTICE


January 22, 2021

Panel consists of: Trotter, J.,
Williams, J., and Wright, S.C.J.[3]

Bailey, C.J., not participating.

---

[3]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.