# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00090-CV

---

**Kristen Anne Spradling, Appellant**

**v.**

**Joseph Anthony Tantillo, Appellee**

---

### FROM THE 395TH DISTRICT COURT OF WILLIAMSON COUNTY
### NO. 20-2476-F395, THE HONORABLE RYAN D. LARSON, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Kristen Anne Spradling appeals the final order in a suit affecting the parent-child relationship (SAPCR). After a trial on Joseph Tantillo's motion to modify the conservatorship, possession, and support of the parties' child, the trial court signed an order granting Tantillo the exclusive right to designate the child's primary residence and entered a standard possession order. We affirm.

## BACKGROUND

Spradling and Tantillo were divorced in 2017 and share one child from their marriage: C.J.T., who was six years old at the time of trial in November 2021. Their agreed final divorce decree appointed them as joint managing conservators with equal possession of the child, with Spradling having the exclusive right to establish the child's primary residence within Travis, Williamson, or Bell counties. The decree required that Tantillo have supervised visitation under

a modified possession order until C.J.T.'s second birthday, after which a standard possession order took effect. The decree also prevented Tantillo from possessing pit bulls around the child and required that he submit to random drug tests at Spradling's request until C.J.T.'s eighteenth birthday.

In August 2020, Tantillo filed an original petition for enforcement of possession of access, an application for a temporary restraining order, and a petition to modify the parent-child relationship. Tantillo sought to modify the terms of the divorce decree to reflect the following changes:

1. Designation of Tantillo as the parent with the exclusive right to designate C.J.T.'s primary residence (with joint conservatorship remaining the same and Spradling having a standard possession order);

2. Alteration of the current drop off location from the police station in Bartlett to the Dollar General store in Bartlett;

3. Modification of the electronic communication provision so that the party not in possession of the child may communicate with the child from 6-8p.m. on Tuesdays, Thursdays, and Sundays;

4. Removal of the injunction regarding the pitbulls;

5. Termination of Tantillo's child support obligation.

In response, Spradling filed a counter-petition, requesting that the trial court: (1) modify Tantillo's periods of possession during the school year so that Tantillo could pick up and drop off the child at his school, rather than picking him up at the mandated exchange location as provided in the decree, and (2) modify Tantillo's child support obligation.

Over a one-day bench trial, the trial court heard testimony from two witnesses—Tantillo and Spradling. Tantillo testified that he lived at home with his mother in Bartlett and worked as a mechanic. At the time of trial, he worked the night shift, starting at 10:00 p.m. and

2

ending at 6:00 a.m. Spradling testified that she owned and lived in a home in Jarrell with C.J.T. and another child from a previous relationship. She worked at an employment staffing firm in Austin on weekdays from 8:00 a.m. to 5:00 p.m. At the time of the trial, she was engaged to a local peace officer named Luis Velasquez.

Tantillo testified that he sought the modification for several reasons. First, he testified that, since the divorce decree was entered in 2017, Spradling had begun engaging in behavior that made him concerned for C.J.T.'s well-being. He testified that Spradling began modeling in nude or semi-nude photoshoots and would post the photos for sale on OnlyFans—a site commonly used for the purpose of requesting payment in exchange for access to uncensored videos. Both parties testified that at one point Spradling advertised her OnlyFans account on her various social media pages. Tantillo testified that he was concerned about Spradling posing for these photos in the presence of C.J.T. but admitted he had never seen C.J.T. in any of the photos, nor did C.J.T. ever mention his mother's photoshoots to him. Spradling admitted that she advertised the photos on social media and OnlyFans for a period of time, but that she deleted her OnlyFans account and stopped advertising the sale of photos on her social media pages in September 2020. [1] She also testified that C.J.T. does not have access to her social media accounts.

Tantillo testified that, since the divorce, Spradling has had various romantic partners, describing them as "too many to count." Of particular concern to Tantillo, Spradling dated a man named Malik Hayes for approximately three months in the spring of 2020. Tantillo introduced into evidence screen shots of Hayes' Instagram account including a selfie of Hayes holding a gun and a post reading: "3 2nd degree murder accusations and a heroin and crack

---

[1] Spradling testified that she could not remember the exact year that she deleted her OnlyFans – she stated that it was likely September 2019 or September 2020.

conspiracy case & I'm still standing." In addition, Tantillo presented evidence that the Texas Department of Family and Protective Services (DFPS) investigated Hayes for neglectful supervision of C.J.T., and that DFPS ultimately concluded there was "reason to believe" that the negligent supervision had occurred. Spradling testified that she immediately ended her relationship with Hayes after DFPS began investigating him, and that she has not contacted him since. She also testified that she began dating Luis Velasquez shortly after ending her relationship with Hayes, and that they became engaged "several months before" the modification suit was filed in August 2020.

Tantillo testified that Spradling refused to abide by the drop-off provisions in the divorce decree by withholding possession of C.J.T. on several occasions. Spradling admitted at trial that she withheld possession of C.J.T. on several occasions throughout August and September of 2020. She testified that her reasons for doing so included her difficulty in arriving on time to the designated drop-off location at the designated time of 6:00 p.m. due to rush-hour traffic in Austin and her fear of meeting Tantillo in person at the drop-off location at times because of Tantillo's "threatening behavior" over the phone. Spradling contended that the current drop-off arrangement was also untenable for her as it required her to drop C.J.T. off at 6:00 p.m. in Bartlett and pick him back up only two hours later at 8:00 p.m. Before Tantillo filed the modification suit, Spradling had suggested they mutually agree to an arrangement where she would drop C.J.T. off at 6:00 p.m. on Thursdays and Tantillo could keep him overnight and drop him off at his school on Friday mornings. This would involve Tantillo keeping him over the weekend and returning him to school on Monday morning. Spradling testified she suggested this arrangement as a way for Tantillo to spend more time with C.J.T. and for Spradling to avoid in-person drop-offs with Tantillo. Tantillo did not agree to this arrangement. At trial, Tantillo testified that taking C.J.T.

4

to his school in Jarrell on Friday and Monday mornings would be difficult: he testified he gets off of work at 6:00 a.m. and would then need to drive home to Bartlett to pick up C.J.T., and then drop off C.J.T. at his school in Jarrell by 7:30 a.m. The testimony was disputed as to whether Tantillo's mother could be a reliable back up option to take C.J.T. to and from school; Tantillo testified that she would be available as a backup, but later indicated that her work hours might make it difficult for her to pick him up on time.

Finally, Tantillo testified that C.J.T. was bitten in the mouth by a dog while in Spradling's care. Spradling did not dispute this but stated she did not know how it happened or whose dog bit C.J.T. Shortly after the dog bite, Spradling created a GoFundMe (online fundraiser) titled "Emergency Fundraiser for Sexual [A]buse [A]wareness for [C.J.T.]." In it, Spradling stated that C.J.T. was being sexually abused by Tantillo's brother and sister-in-law and she used the dog bite photo to imply the injury was related to the sexual abuse allegations. Spradling testified that she first learned of the alleged abuse when C.J.T. made an outcry directly to her. Spradling admitted at trial that she intentionally posted a misleading photo because she was upset about the sexual abuse allegations; however, she justified her actions by stating at trial that she believed the allegations were true at that time. Tantillo admitted that DFPS had investigated his brother and sister-in-law regarding alleged abuse of C.J.T. Spradling testified that C.J.T. outcried directly to her and that the child now requires counseling as a result of the alleged abuse. After concluding its investigation, DFPS ruled out any findings of sexual abuse. Spradling testified that, even though the allegations were not substantiated by DFPS, she still believes that the sexual abuse occurred. Spradling provided the abuse allegations and her resulting concern for C.J.T.'s safety as an additional reason for her refusal to allow Tantillo to exercise his possession of C.J.T. at the

5

scheduled times.  C.J.T. did not testify at trial, nor did any other witness that could express C.J.T.'s preferred home environment, location, or school.

At the close of trial, the trial court signed an order granting all of Tantillo's requested relief, including the exclusive right to designate C.J.T.'s primary residence with geographic restriction to Williamson and Bell Counties, and the exclusive right to designate C.J.T.'s school.  This appeal followed.

## DISCUSSION

Spradling asserts three arguments on appeal that we have re-organized into the following issues:  (1) whether there was any evidence supporting three of the trial court's factors supporting the best-interest determination, (2) whether the evidence was factually sufficient to show that the remaining factors were relevant to the best-interest analysis, and (3) whether the trial court abused its discretion in awarding Tantillo the exclusive right to determine C.J.T.'s residence and school.  We discuss each issue in turn.

### *Standard of Review*

We review a decision to modify conservatorship for an abuse of discretion. *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied).  A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or without reference to guiding principles. *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.). The abuse of discretion analysis requires the appellate court to conduct a two-pronged inquiry: (1) whether the trial court had sufficient information on which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. *Id.* at 477 (citation omitted).  A trial court's factual findings on disputed issues are not conclusive, and, when the record contains

6

a reporter's record, an appellant may challenge those findings for evidentiary sufficiency. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). Challenges to the legal and factual sufficiency of the evidence are not independent grounds of error but are factors used in assessing whether the trial court abused its discretion. *Ayala v. Ayala*, 387 S.W.3d 721, 726 (Tex. App.—Houston [1st Dist.] 2011, no pet.). A trial court does not abuse its discretion when there is some evidence of a substantive and probative character to support the trial court's judgment. *Id.*

In a suit for modification of a conservatorship order, when a party lodges a legal sufficiency challenge, the party must prove that no evidence supports the finding. *See Zeifman*, 212 S.W.3d at 588; *see also PlainsCapital Bank v. Martin*, 459 S.W.3d 550, 557 (Tex. 2015) (providing that appealing party may prevail only if no evidence, or merely scintilla of evidence, supports adverse finding, and if position advanced by party is conclusively established). On the other hand, when an appellant attacks the factual sufficiency of an adverse finding on an issue on which he did not have the burden of proof, the appellant must demonstrate that the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986).

Trial courts have broad discretion to decide the best interest of a child in family law matters such as custody, visitation, and possession. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). Because the trial court faces the parties, observes their demeanor, and has an opportunity to evaluate the claims made by each parent, the trial court has wide latitude in determining the child's best interest. *Id.* A court may modify the conditions of a conservatorship if it would be in the best interest of the child. *See* Tex. Fam. Code § 156.101; *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). To determine whether a modification is in the child's best interest, the court may weigh all factors bearing directly or indirectly on the child's physical,

emotional, mental, educational, social, moral, or disciplinary welfare and development. *Fair v. Davis*, 787 S.W.2d 422, 428–429 (Tex. App.—Dallas 1990, no writ). In evaluating the child's best interests, the non-exhaustive factors include the following: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) parental abilities of the individuals involved; (5) programs available to those individuals to promote the best interest of the child; (6) plans for the child by these individuals; (7) stability of the home or proposed placement; (8) acts or omissions of the parent that may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *See Holley*, 544 S.W.2d at 371–72.

In its findings of fact and conclusions of law, the trial court stated that it considered the following factors in determining whether modification was in C.J.T.'s best interest:

a.  Testimony from Tantillo;

b.  Testimony from Spradling;

c.  Final Decree of Divorce Enforcement violations by Spradling;

d.  Spradling's sexually suggestive photos with a child present;

e.  Spradling's OnlyFans account and at least three other social accounts with sexually explicit behavior and language;

f.  Spradling's OnlyFans account where she receives income for her sexually suggestive photos;

g.  CPS involvement – Reason to Believe Spradling's Boyfriend was [engaged in] Neglectful Supervision [of] the child;

h.  The need for the child to attend counseling;

i.  The need for the possession exchange location to occur at a neutral location or child's school;

8

j. The numerous relationships Spradling has been involved in since the divorce and the need for a paramour clause;

k. Child's injury to his mouth by a dog during Spradling's possession time;

l. Numerous defaming social media posts by Spradling against Tantillo and Tantillo's family.

Spradling argues that there was no evidence supporting the trial court's findings of factors (d), (f), and (h), and that there was insufficient evidence for the trial court to determine that the remaining factors were relevant to C.J.T.'s best interest. Taking the best-interest standard into consideration, we address each of Spradling's challenged factors in turn.

***Issue #1 – whether there was some evidence to support the trial court's findings of factors (d), (f), and (h)***

Spradling argues the trial court abused its discretion because there was no evidence presented at trial to support the trial court's findings of factors (d), (f), and (h). These factors concerned Spradling's sexually explicit photos with a child present, Spradling's OnlyFans account where she received income for her sexually suggestive photos, and C.J.T.'s alleged need for counseling as a result. At trial, Tantillo presented several exhibits showing Spradling posing in semi-nude, sexually provocative photos that she posted to one or more of her social media pages. Spradling did not dispute that she advertised these photos for sale on her various public social media pages, but she claimed that she never received any income from the photos and that there was no evidence to the contrary, that these photos had no relevance to a best interest analysis because she never took the photos in C.J.T.'s presence, that neither C.J.T. nor her other child were ever pictured in any of the photos, and that C.J.T. never made any comments to Tantillo about his mother's photos. Tantillo admitted that C.J.T. cannot be seen in any of the photos, but claimed that the photos must have had an impact on C.J.T., because C.J.T. began engaging in "flashing"

9

activities while in Tantillo's care. He also claimed that C.J.T. needed to attend counseling as a result of his mother's online activity. Spradling testified that C.J.T. never saw any of the posts, as he did not have a phone and he did not have access to her phone or social media accounts, and that by the time of the trial in November 2021, she had deleted all of her posts containing explicit content. Based on these facts, it is apparent that Spradling had an extensive online media presence where she would frequently share intimate photos of herself and her lifestyle—however, the evidence did not show that Spradling received money from her photos or that she ever posted sexually explicit photos with either of her children. Accordingly, we conclude there was insufficient evidence for the trial court to base its best interest findings on factors (d) and (f). However, this error was harmless because the court had sufficient evidence to support its findings regarding the remaining factors, as discussed below. *See Gillespie,* 644 S.W.2d at 451 (providing that appellate courts review trial court's decision on custody, control, possession, and visitation matters for abuse of discretion, and will reverse trial court's order only if it is determined from reviewing record as a whole that trial court abused its discretion).

Spradling next argues there is no evidence to support the trial court's finding (h) regarding C.J.T.'s need to attend counseling. The testimony at trial was disputed as to the reasons C.J.T. needed counseling: Tantillo testified it was because of Spradling's online activities, while Spradling stated it was because C.J.T. was allegedly sexually abused by Tantillo's brother and sister-in-law. The trial court, as the factfinder, was required to resolve the conflicts in the evidence, and we must defer to its conclusions regarding the witnesses' credibility. *See Anderson v. Dainard*, 478 S.W.3d 147, 152–53 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *see also Werthwein v. Workman*, 546 S.W.3d 749, 760 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

10

Accordingly, we conclude that there was at least some evidence to support the trial court's findings regarding this factor.

Although there was no evidence to support the trial court's findings on factors (d) and (f), there was some evidence to support the trial court's finding on factor (h). We grant in part and overrule Spradling's first issue.

### Issue #2 – whether there was sufficient evidence to show that the remaining probative factors were relevant to the best-interest analysis

While Spradling admits that the court heard some evidence to support the trial court's remaining factors, she contends that none of the remaining factors are relevant to the best-interest determination. We disagree. For the following reasons, we conclude that evidence supporting the remaining factors was sufficient to show that modification was in C.J.T.'s best interest.

As highlighted previously in our summary of the trial, Tantillo testified that, since he and Spradling's divorce in 2017, she has had "too many [boyfriends] to count" and that he was concerned about these individuals, specifically Hayes, endangering C.J.T. At trial, Tantillo presented evidence of Hayes' concerning social media posts, including an Instagram story stating: "3 2nd degree murder accusations and a heroin and crack conspiracy case & I'm still standing." Tantillo also presented evidence that DFPS investigated Hayes for neglectful supervision of C.J.T. Spradling testified in response that C.J.T. was rarely around Hayes, that the DFPS allegations were unfounded, and that any harm to C.J.T. was obviated when she broke up with Hayes in May 2020 and that she has had no contact with him since. She also testified that she became engaged to Velasquez several months before the modification suit was filed in August 2020, and therefore it was unnecessary for the trial court to add a paramour clause to the modified order. While Tantillo

11

could not support his contention that Spradling had had "too many [boyfriends] to count", as he failed to name any individual other than Hayes while on cross-examination, we note that Tantillo provided the trial court with several exhibits of Spradling's social media posts where she was posed in various states of undress around various men. And, while Spradling claimed C.J.T. had minimal contact with her romantic partners, she admitted at trial that Hayes regularly slept overnight at her house—where C.J.T. was present—for several weeks. We conclude that, based on this record, the trial court had sufficient evidence to determine that Spradling's various romantic partners could have an adverse effect on C.J.T. and his need for stability in his home.

In addition, the undisputed evidence at trial showed that C.J.T. was bitten by a dog while in Spradling's care. Spradling attempted to deflect blame for this incident by claiming at trial that she did not know whose dog caused the bite. She also admitted at trial that she posted a photo of C.J.T. with the injury to a GoFundMe page out of retaliation for the DFPS investigation regarding alleged sexual abuse by Tantillo's brother and sister-in-law. Taking the *Holley* factors into consideration and giving due deference to the trial court as finder of fact in this case, we conclude that there was evidence of a substantive and probative character to support the trial court's findings that the modifications were in C.J.T.'s best interest. Accordingly, based on the record as a whole, we conclude that the trial court had sufficient information to exercise its discretion to modify the divorce decree and that it did not err in application of its discretion.

*Issue #3 – whether the trial court abused its discretion in modifying the geographic restriction and awarding Tantillo the exclusive right to determine C.J.T.'s school*

In her third and final issue, Spradling argues that the trial court abused its discretion by modifying the order to allow Tantillo to designate C.J.T.'s school in connection with

designating the child's primary residence.  Tantillo responds that Spradling did not preserve error on this issue and it is therefore waived.  We agree with Tantillo.

It is undisputed that Tantillo's pleadings did not request a change to the geographic restriction or the exclusive right to determine C.J.T.'s school.  However, Spradling did not raise this objection to the trial court's ruling at a point when the trial court had an opportunity to correct this alleged error.  *See Solomon v. Steitler*, 312 S.W.3d 46, 58 (Tex. App.—Texarkana 2010, no pet.).  When Tantillo began testifying that he wanted to change C.J.T.'s school, Spradling made no objection.  In addition, after the trial court orally rendered its ruling at the end of the one-day bench trial, Spradling's counsel acknowledged the ruling but failed to make any objections on the record.

> **[Spradling's counsel]:**  What about school?  Would the child stay in school until the end of the school year?
>
> **The court:**  That's correct, January 1st.  No, I'm sorry, I am going to make the switch going January 1st. He can elect that.
>
> **[Spradling's counsel]:**  So as of January 1st, he will go to school determined by the dad?
>
> **The court:**  Mr. Tantillo can elect to move the child to Bartlett ISD in the event that he wants to.  In the event that he wants to work something out with your client as to the school district and wants to do something different, then they can do that, but if he elects to change to Bartlett, he can do that.

Spradling's counsel made no objections after this exchange, nor did Spradling assert any issue with Tantillo's right to designate C.J.T.'s school in her motion for new trial.  Because our review of the record shows no objection to this issue whether in trial or in any post-trial motions, we conclude that it is waived and Spradling may not assert it for the first time on appeal.  *See* Tex. R.

13

App. P. 33.1 (providing that, in order to preserve issue for appellate review, appellant must show that it presented its complaint to trial court).[2] We overrule Spradling's third issue.

## CONCLUSION

Having overruled all of Spradling's issues, we affirm the trial court's order to modify the parent-child relationship.

_____
Edward Smith, Justice

Before Justices Baker, Kelly, and Smith

Affirmed

Filed:   February 29, 2024

---

[2] We conclude that, to the extent she raised it as a separate issue, Spradling has also waived on appeal any complaint regarding the trial court's modifying the order to exclude Travis County from the geographic restriction.

14